358 So.2d 1008 (1978)
Randy HOFFMAN, a minor, by and through his father, Earl Hoffman, next friend, Plaintiff-Appellant,
v.
PLANTERS GIN COMPANY, INC., Defendant-Appellee.
No. 50175.
Supreme Court of Mississippi.
May 24, 1978.
*1009 Yancy & Easley, Cliff R. Easley, Jr., James W. Pennington, Bruce, for plaintiff-appellant.
Campbell & DeLong, Fred C. DeLong, Jr., Lawrence D. Wade, Greenville, for defendant-appellee.
Before PATTERSON, BROOM and BOWLING, JJ.
PATTERSON, Chief Justice, for the Court:
This is an appeal from the Circuit Court of Sunflower County which granted the defendant, Planters Gin Company, Inc., a peremptory instruction against plaintiff, Randy Hoffman, in a tort suit.
A review of the facts most favorable to the plaintiff reveals that at the time of the accident he was fourteen years of age. The previous year he had dropped out of grade school and accompanied his father, Earl Hoffman, about his work. The father was employed by Fratesi Farms as a truck driver, and Randy, who was not employed, on occasion aided his father in this work. For *1010 two or three weeks prior to the accident in which he was injured Randy had helped his father in transporting cottonseed from the appellee's gin in Indianola, Mississippi, to an oil mill.
On January 21, 1976, the son accompanied his father to the gin where he assisted in packing the seed on the truck. Later Randy entered the seed house in the center of which was a tunnel-like passage containing an auger in a recessed concrete floor. The auger moved the seed from the house for loading. It was covered with removable floor plates or covers, but when the pressure of seed became too great, they would push the covers up and spill onto the narrow (eighteen inches each side of the auger) floor of the tunnel. Randy, his father, and Nate, one of the gin's employees, entered the tunnel to shovel seed back into the auger as the flow had slowed. While in the tunnel, Mr. R.L. (Sonny) White, the gin manager, knelt beside the tunnel, admonishing them to be careful and not get into the auger. Nate and Mr. Hoffman left the tunnel, but Randy remained and continued sweeping seed. When Nate shouted that his father wanted him, Randy turned, slipped on some seed, and his right foot fell into the revolving auger. As a consequence the leg was amputated below the knee, and at the time of trial Randy was being fitted with an artificial leg. The injury resulted in a suit by Randy by and through his father Earl Hoffman, next friend, against Planters Gin Company, Inc.
The record discloses there were no warning signs on the building or doors of the tunnel and the entrance to it was never locked. Larry Cook, a gin manager in Sumner, Mississippi, testified that the generally accepted safety practices of the industry in the Mississippi Delta area were posting of warning signs, prevention of unauthorized personnel around such machinery, and covers on augers accessible to anyone.
Randy testified that on the day of the accident as well as on other occasions, six or seven of the auger covers were off and six or seven were on. He stated he was in the tunnel perhaps two or three times a day and that no one, including employees or their superiors, ever warned him to stay out of the tunnel or, as far as he knew, advised his father to keep him out of the tunnel. He conceded he was admonished, however, to be careful and knew the auger was dangerous. Additionally, Randy testified that he had replaced some of the gin employees in their work upon their requests while they took a break to smoke or otherwise refresh themselves.
The elder Hoffman testified that no one ever told him that he or his son should stay out of the tunnel and that to his knowledge no one ever personally told Randy to stay out. He stated that other employees had seen Randy going about the seed house on several occasions and that there were no warning signs about the tunnel and that seven or eight of the auger covers were usually left off of it.
George Robinson, a truck driver who also hauled cottonseed from the gin during January 1976, testified that drivers could enter the tunnel and place seed into the auger to expedite loading. He had done so, and no one had ever ordered him to stay out of the tunnel. He also observed there were no warning signs, the door to the tunnel was not locked, and, at times, there were no covers on the auger.
The manager, White, testified the main business of the gin was production of certified seed for planting. The purpose of the tunnel was to relieve moisture and heat from the seed, to protect the auger, and to keep people away from the machinery. To prevent the seed from being crushed in the trough it was necessary to unpin one end of the covers over the auger to allow seed to spill out when the trough became too full. However, at the time of the accident cull or low germination seed were being transported to an oil mill so that special care to prevent their being crushed in the trough was unnecessary.
Fred Harrington, delinting manager for the gin, testified that he had observed Randy and his father in the tunnel and the seed house on several occasions and had warned both to stay out of the tunnel.
*1011 The only issue presented is whether the trial court erred in granting a peremptory instruction for appellee. We are of the opinion the evidence presented an issue for determination by a jury.
The established rule in passing upon the propriety of granting a peremptory instruction is that the Court must look solely to the testimony in behalf of the party against whom the peremptory instruction was requested and consider that testimony as true along with all permissible inferences to be drawn therefrom. Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975); Gates v. Murphree, 286 So.2d 291 (Miss. 1973); Dazet v. Bass, 254 So.2d 183 (Miss. 1971). If such evidence could support a verdict for him, the peremptory instruction should not have been given. Gates, supra.
In order to ascertain the liability of appellee, if any, it is necessary to consider the following:
(1) The status of the minor, that is, whether he was an invitee, a licensee or a trespasser;
(2) The duty of the gin to the minor; and
(3) Whether there was a breach of that duty.
As to status, an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. Langford v. Mercurio, 183 So.2d 150 (Miss. 1966); Wright v. Caffey, 239 Miss. 470, 123 So.2d 841 (1960). A licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner whereas a trespasser is one who enters upon another's premises without license, invitation or other right. Kelley v. Sportsmen's Speedway, Inc., 224 Miss. 632, 80 So.2d 785 (1955).
Ordinarily, a child who accompanies a parent or other adult customer onto business premises to conduct business is an invitee. Gulf Refining Co. v. Moody, 172 Miss. 377, 160 So. 559 (1935); and see 44 A.L.R.2d, Child-Invitee or Licensee, § 5, p. 1329 (1955). And, although the injured party may have entered the premises as an invitee, he may lose this status and acquire that of a licensee, if not a trespasser, if he exceeds the scope or purpose of the invitation by proceeding into an area not included in the invitation. Braswell v. Economy Supply Co., 281 So.2d 669 (Miss. 1973); Kelley v. Sportsmen's Speedway, Inc., 224 Miss. 632, 80 So.2d 785 (1955).
We are of the opinion the testimony and reasonable inferences therefrom favorable to the plaintiff were sufficient to present a jury issue. Unquestionably, Randy and his father were either licensees or invitees lawfully upon the gin premises to further the father's business. According to the testimony, their presence as well as Randy's accessibility to the tunnel, was known to the defendant and neither was directed to stay out of it. It also appears that other drivers were given the same access to the area.
Additionally, there were no warning signs prohibiting entrance and Randy had been seen in the seed house and tunnel. Indeed, he had assumed the places of some of the gin employees whose work required them to be in the seed house and tunnel, while they took a recess from their duties to smoke or otherwise refresh themselves. Moreover, from the evidence, Randy's presence in the tunnel immediately adjacent to the revolving auger was known to the defendant through its manager who called into the tunnel admonishing Nate, Randy and his father to be careful and not to get into the auger. While it is true these facts were largely denied by the defendant's testimony, it nevertheless created a conflict for resolution by a jury.
The pertinent question is whether Randy's status at the time of injury brings him within the standard of ordinary and reasonable care or whether a lesser standard, as held by the trial court was appropriate. The defendant's motion for a peremptory instruction was sustained upon the premise that Randy was a licensee so the defendant owed him as a matter of law no duty except not to willfully or wantonly injure him. In our opinion this was error.
*1012 The legal distinctions between a licensee and invitee have little significance once the presence of a person upon the possessor's premises is known and there are affirmative actions involving him. Status relates largely to negligence for the condition of premises, that is, passive negligence and not to active or affirmative negligence emanating from action or inaction by the possessor with knowledge of an individual's presence. In Astleford v. Milner Enterprises, Inc., 233 So.2d 524 (Miss. 1970), we discussed active and passive negligence, stating:
... These courts hold that where the negligence is passive the licensee is not permitted to recover in the absence of proof of wilfulness or wantonness but where the negligence is active, that is, actual operation on the premises, then a licensee is permitted to recover if the possessor of the premises is guilty of simple negligence or fails to use ordinary, reasonable care. We have not as yet made this differentiation and do not think that we should do so in this case. It is the thinking of this writer, but not necessarily that of the Court, that this area of law merits further study in the light of present day conditions and it may well be that this Court will in the future abandon the traditional distinctions between trespassers, licensees and invitees, or at least draw a distinction between active and passive negligence insofar as a licensee is concerned.
(233 So.2d at 525-526)
As quoted, this Court did not attempt to distinguish active from passive negligence though acknowledging its existence. It is noteworthy, we think, that in Astleford the injured party was a licensee whose presence on the premises was unknown to the defendant. In King v. Dudley, 286 So.2d 814 (Miss. 1973), a case involving injury and death from falling pulpwood which had been hoisted into the air with the assistance of the injured party, we stated:
The case before the Court involves more than a condition and inaction on the part of defendants. In leaving the machine unattended with the wood hoisted in the air, defendants acted affirmatively in creating the situation resulting in Lee's death. Lee had been warned of the danger and no doubt he was negligent in placing himself where the wood could fall on him. We are of the opinion that it cannot be said as a matter of law that Lee's negligence was the sole proximate cause of his death. If the jury should find defendants were also negligent, then their negligence would be a contributing proximate cause of the death of Lee, and the latter's negligence would constitute contributory negligence.
(286 So.2d at 816-817)
We note the Court did not place the standard of care upon the status of the deceased at the time of injury, that is, whether he was a business invitee or had exceeded that status by engaging in work by attaching a cable, thereby becoming a licensee, but rather based its opinion upon the affirmative action of the defendant as creating a jury issue to be determined by the doctrine of reasonable care.
It is accurate, as contended, that if Randy were an invitee, the gin owner was under a duty to have the premises in a reasonably safe condition for use in a manner consistent with the invitation or at least a duty not to lead plaintiff into a dangerous trap or expose him to unreasonable risk. Braswell v. Economy Supply Co., 281 So.2d 669 (Miss. 1973); Strand Enterprises v. Turner, 223 Miss. 588, 78 So.2d 769 (1955). Or if Randy were a licensee, the owner owed only the duty to refrain from willfully or wantonly injuring him. Astleford v. Milner Enterprises, Inc., 233 So.2d 524 (Miss. 1970); Marlon Investment Co. v. Conner, 246 Miss. 343, 149 So.2d 312 (1963); Dry v. Ford, 238 Miss. 98, 117 So.2d 456 (1960). And, it is said in such a situation something more is required to impose liability than mere inadvertence or lack of attention; there must be a more or less extreme departure from ordinary standards of care, and conduct must differ in quality, as well as in degree, from ordinary negligence involving a conscious disregard of a known serious danger. Coleman v. Associated Pipeline Contractors, *1013 Inc., 444 F.2d 737 (5th Cir.1971); Astleford, supra; Dry, supra.
However, these general statements, as profound as they may be, do not fit the present factual circumstance and therefore do not control it. We are of the opinion the testimony presented a conflict of facts for resolution by a jury to be measured by the standard of ordinary and reasonable care rather than the standard of intentional or wanton negligence as held by the trial court. We think the premises owner is liable for injury proximately caused by his affirmative or active negligence in the operation or control of a business which subjects either licensee or invitee to unusual danger, or increases the hazard to him, when his presence is known and that the standard of ordinary and reasonable care has application.
We are persuaded to this view by Astleford and King, supra, as well as 2 Harper & James, The Law of Torts, section 27.10, pages 1475-1476 (1956), as follows:
There are a good many dicta  mostly in older cases  and some holdings to the effect that the occupier of land owes the bare licensee no greater duty than to refrain from intentional, or willful or wanton, misconduct towards him. "The prevailing view is to the contrary, however, and it is now generally held that in cases involving injury resulting from active conduct, as distinguished from conditions of the premises, the landowner or possessor may be liable for failure to exercise ordinary care towards a licensee whose presence on the land is known or should reasonably be known to the owner or possessor."
And, in 2 Restatement of the Law of Torts, Second, section 341 (1965), it is stated:
A possessor of land is subject to liability to his licensees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if,
(a) he should expect that they will not discover or realize the danger, and
(b) they do not know or have reason to know of the possessor's activities and of the risk involved.
As comment to the above it is stated the possessor of premises need do no more than exercise reasonable care to warn a licensee of his intention to do an act which he should realize is likely to cause harm to the licensee if he comes into or remains within the area in danger by it. The possessor is entitled to expect that such warning will cause the licensee to avoid the danger unless the possessor realizes, or should realize, that the warning would be ineffective, either because the danger is so imminent that the licensee would have no opportunity to avoid it or because the licensee does not hear the warning or is not able or does not intend to take advantage of it.
From our analysis we think the facts of this case proper for jury resolution, particularly whether a fourteen-year-old boy with little education could understand and appreciate the danger of his position even though warned to be careful. Indeed, such warning, if found to be true, could have been interpreted by him as an invitation to remain adjacent to the exposed auger as long as care was used.
The statement of Prosser, Law of Torts (4th Ed. 1971), page 379, expresses our view when it states:
... It is now generally held that as to any active operations which the occupier carries on, there is an obligation to exercise reasonable care for the protection of a licensee... .
We are of the opinion the trial court erred in granting a peremptory instruction for the defendant based upon intentional or wanton negligence.
REVERSED AND REMANDED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.