**David Lee ARCHIE, by his Mother Juanita ARCHIE, Plaintiff-Appellant,**

v.

**ILLINOIS CENTRAL GULF RAILROAD COMPANY, A Corporation, Defendant-Appellee.**

**No. 83–4079
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

June 23, 1983.

Rehearing Denied Aug. 10, 1983.

288

McIntyre, Gowan & Gray, Edgar Reeves Jones, William Gray, James G. McIntyre, Jackson, Miss., for plaintiff-appellant.

Wise, Carter, Child & Caraway, Charles T. Ozier, V. Laurie Alexander, Jackson, Miss., for defendant-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

PER CURIAM:

This Mississippi diversity case comes to us on plaintiff David Lee Archie's appeal from the district court's summary judgment in favor of the defendant railroad. Because we find that this case presents material questions of disputed fact, we vacate the district court's judgment and remand for further proceedings.

In reviewing a district court's grant of summary judgment, we are required to consider the evidence "in the light most favorable to the party resisting the motion." *Trevino v. Celanese Corp.,* 701 F.2d 397, 407 (5th Cir.1983); *accord,* Fed.R.Civ.P. 56. The following account therefore closely tracks the deposition testimony of David Archie and his mother, Juanita Archie.

On or about May 28, 1969, David Archie, then five-and-one-half years old, was badly burned while attempting to cross the railroad's right-of-way in Jackson, Mississippi. Like many neighborhood children (and some adults), Archie and his two eight-year-old companions were in the habit of using a certain beaten path across the tracks even though that path was a mere shortcut and not a formally established crossing. The nearest public crossings were approximately one-quarter mile to the south and one-quarter to one-half mile to the north. Employees of the railroad were allegedly aware of the shortcut, and took no affirmative steps to close it or to warn those who used it of its dangerousness. Although Archie had successfully used the shortcut many times without difficulty, on the day of his injury he and his two playmates found that a pile of burning railroad ties had been piled in a ditch blocking the path. A crosstie had been placed across the ditch, however, thus forming a makeshift bridge. Because he had no shoes, Archie attempted to negotiate

the crossing by riding "piggy-back" on one of his friends. Disaster ensued: Archie's eight-year old playmate lost his balance and dropped his barefoot rider into the ditch full of smoldering crossties. Archie called for help, but his companions had already run away. The resulting third-degree burns required, among other things, the amputation of some of Archie's toes.

Although Archie and his mother have specifically contended that the railroad was aware of and condoned the use of the short-cut by both children and adults, and that it was the railroad's policy or practice to burn old crossties in uncovered piles on its right-of-way, the railroad nonetheless denies that it had any such policy or practice, and claims that the fire must have been set by some unknown trespasser. The railroad also argues that Archie and his playmates were trespassers, or at best licensees, and that it therefore was required only to refrain from acting with wilful or wanton negligence.

In the proceedings before the district court, the railroad moved for summary judgment on the ground that "the railroad did not breach any duty owed to the plaintiff since the fire on the railroad's property was not willful or wanton negligence but merely an obvious passive condition on the premises." The district court granted the motion without opinion. See Fed.R.Civ.P. 52(a).

On this appeal, Archie urges that the proper standard under Mississippi law is simple, not wilful or wanton negligence, and that material issues of contested fact exist with respect to that issue, thus rendering summary judgment inappropriate. We agree.

■ The traditional rule in Mississippi has been that a landowner owes no duty of care to a trespasser or licensee other than to refrain from wilful or wanton negligence. See, e.g., Westmoreland v. Mississippi Power & Light Co., 172 F.2d 643, 644 (5th Cir.1949) (applying Mississippi law). The Mississippi Supreme Court, however, has created a simple-negligence exception to this rule that applies against a landowner whose (1) active negligence subjects a licensee to unusual danger (2) when the presence of the licensee is known. Hoffman v. Planters Gin Co., 358 So.2d 1008, 1013 (Miss. 1978). Since Archie disclaims any intent to rely on the doctrine of attractive nuisance, the legal dispute in this case centers on whether the Hoffman exception applies under the circumstances of this case. Depending upon the development of the facts at trial, we think that it might.

■ As a preliminary matter, we note that under Mississippi law those who use a frequented path or shortcut across another's—and particularly across a railroad's—property are treated as licensees, not as mere trespassers. See Illinois Central Railway v. Dillon, 111 Miss. 520, 71 So. 809 (1916); 2 F. Harper & F. James, The Law of Torts § 27.7, at 1468 & n. 7 (1956); W. Prosser, Handbook of the Law of Torts § 60, at 377 (4th ed. 1971); Annot., 167 A.L.R. 1253 (1947) (annotation entitled "Duty of railroad toward persons using private crossing or commonly used footpath over or along railroad tracks"). The two-part Hoffman test may thus apply to this case.

■ Assuming, as we must, that Archie is correct in his statement that the railroad had a practice or policy of burning railroad ties along its Jackson right-of-way, we think that a Mississippi court would hold that deliberately setting crossties afire on or very near a well-worn path used by neighborhood residents, if negligent, would constitute active, rather than merely passive negligence. The general concerns in this area have already been well identified:

> In judging these matters, all the circumstances must be considered. Thus the frequency with which a licensee may be expected to avail himself of the license; whether he may be expected to be in a certain place or follow a recognized path rather than roam at large, and, if so, the proximity of that place or path to the danger; whether the nature of the premises would lead the licensee to expect more or less lurking danger; these

and many other factors would bear on the question of what, if any, precautions reasonable care would require. As a general rule, more precautions are apt to be required where premises have been arranged for the entry of more or less unidentified segments of the public, or where a permissive well-defined way or path is involved, than where the danger exists in ordinary private premises like homes and farms, or in those parts of business and industrial premises that are not arranged or generally intended for the reception of outsiders.

2 F. Harper & F. James, *supra,* § 27.9, at 1472–73 (footnotes omitted). Mississippi appears to follow this approach in fact, if not in name. In *Lepnick v. Gaddis,* 72 Miss. 200, 16 So. 213 (1894), for instance, the Mississippi Supreme Court held that an accident involving an uncovered excavation or cistern lying immediately next to a much frequented path across a private lot should be analyzed under a simple negligence standard. *See also* Annot., 20 A.L.R. 202 (1922). The cases that the railroad cites seemingly to the contrary effect are all, as Archie rightly points out, attractive nuisance cases not involving paths, and therefore do not apply here. *See, e.g., Hughes v. Star Homes, Inc.,* 379 So.2d 301 (Miss.1980) (child trespasser's death in open septic tank in house under construction not attributable to "active conduct" of builder; no pathway involved).

We also think that a Mississippi court accepting Archie's account of the facts would hold the railroad chargeable with the knowledge that the shortcut or path here in issue was frequented by local passersby. Indeed, the language of the Mississippi Supreme Court in this regard has been quite sweeping:

> [E]very morning between the hours of 6 and 7 o'clock employees of certain mills situated on the east side of the track crossed this railroad track at this particular [unauthorized] place. This fact certainly must have been well known to the defendant railroad company, and by all the laws of justice and humanity they are charged with this knowledge. There was

no protest of any kind by the defendant company of this use of the old [and officially closed] street by pedestrians.

*Dillon, supra,* 111 Miss. at 523, 71 So. at 811. This approach also appears to be equally favored by the cases, *see* Annot., 167 A.L.R. 1253, 1346 (1947) (collecting cases), as well as by the modern commentators, *see* 2 F. Harper & F. James, *supra,* § 27.6, at 1466; W. Prosser, *supra,* § 58, at 360. Whether analyzed under *Hoffman,* under the old railroad crossing accident cases such as *Dillon,* or under the simple private-path approach used in *Lepnick,* the circumstances of this case all point to the possible appropriateness of a simple negligence standard. *See also Restatement (Second) of Torts* § 334 (1965) (imposing on those who engage in "activities highly dangerous to constant trespassers on a limited area" a duty of "reasonable care").

All of this does not mean, of course, that Archie is entitled to recover. The railroad hotly contests that it had any policy or practice of burning ties on its right-of-way and that it condoned the use of the shortcut. It further argues that Archie cannot recover because he saw the fire, recognized that it was dangerous, and yet chose to attempt the crossing anyway. These are not the kinds of questions that should be resolved by a court on a motion for summary judgment.

The railroad shall bear the costs of this appeal. The summary judgment against Archie is VACATED and the case is REMANDED for proceedings consistent with this opinion.