Charles M. HILL and Judy H. Hill, Plaintiffs,

v.

**MARCH OF DIMES BIRTH DEFECTS FOUNDATION, Defendant.**

Civ. A. No. J84–0543(L).

United States District Court, S.D. Mississippi, Jackson Division.

March 25, 1986.

William W. Ferguson, Raymond, Miss., for plaintiffs.

Jim Bullock and Cary E. Bufkin, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, Miss., for defendant March of Dimes Birth Defects Foundation.

## MEMORANDUM OPINION

TOM S. LEE, District Judge.

This cause came before the court for trial and the court heard testimony from witnesses and reviewed exhibits admitted in evidence. Plaintiffs Charles M. Hill and Judy H. Hill initiated this action in the Circuit Court of Hinds County, Mississippi, alleging in their complaint that defendant March of Dimes Birth Defects Foundation (MOD), acting through its agents, was negligent in failing to adequately warn or instruct Charles M. Hill on the dangers in using a scaffold. Hill fell from the scaffold while removing decorations from the Mississippi State Fairground Trade Mart Building (Trade Mart) following a fund-raising event sponsored by MOD. In their complaint, Charles Hill seeks damages for personal injuries he sustained in the fall and Judy Hill seeks recovery for loss of consortium and services. The action was removed to this court pursuant to 28 U.S.C. § 1441.[1] Upon a review of the evidence adduced at the non-jury trial, the court makes the following findings of fact and conclusions of law.

Plaintiff Charles M. Hill was, at the time of his accident on December 16, 1982, employed by Federated Guaranty Insurance Company (FGIC) as an insurance salesman. He had been so employed since December 1981. Pursuant to a request from his regional sales manager, Clayton Bush, Hill volunteered his services for the 1982 Christmas fund-raising event sponsored by MOD and held at the Trade Mart. Bush was a member of the board of directors of the Mississippi Chapter of MOD and was in charge of providing the Christmas tree and large decorations for the event. On the morning of the event, and upon the request of Bush, Hill delivered a large Christmas tree to the Trade Mart. Throughout the day of December 16, he assisted other MOD volunteers in placing Christmas decorations on the tree and around the building. Hill testified at trial that his sole motivation for participating in the preparation for the event was to impress and befriend Bush. Because of his services to MOD on December 16, and because he had won a sales contest sponsored by FGIC as a production incentive, Hill received four free tickets to the MOD event. He and his wife

1. Plaintiffs originally joined the Mississippi Fair Commission as a defendant, alleging that the Commission failed to provide reasonably safe facilities for the use of Mr. Hill. The Commission was dismissed from the action on Eleventh Amendment immunity grounds and there were no further jurisdictional questions raised.

attended the function on the evening of December 16.

Early on the morning of December 16, MOD officials and volunteers realized that they would need some type of ladder to place the decorations on the high walls of the Trade Mart Building. They secured the use of a large, mobile scaffold owned by the Trade Mart. Frank Turman, building manager of the Trade Mart, instructed those present early on December 16 on the correct use of the scaffold. The testimony of Billie Jean Freeman, executive director of MOD and the only paid employee of the organization present at the event, and Janet Harris, a member of the MOD board of directors, indicated that the instructions received from Frank Turman were repeated to all of the people who worked on the scaffold at various times during the day, and that such instructions were repeated in plaintiff's presence. Additional testimony from Edward Smith, another MOD official who was present during the preparations on December 16 but who arrived after Hill and others had erected the Christmas tree with the aid of the scaffold, was to the effect that Hill passed on to him specific instructions on the use of the scaffold.

The scaffold was approximately twenty-five feet tall, seventy-eight inches long and twenty-nine inches wide. Rotating wheels were located at each corner of the base of the scaffold. The scaffold possessed outrigger or "frog leg" devices which could be utilized to provide stability when the scaffold was stationary. The instructions received by MOD officials and volunteers and passed on to other workers throughout the day indicated that the scaffold could only be moved when a person was stationed at each of the four corners of the base. They were also warned to have three or four persons anchoring the base of the scaffold when an individual was working at or near its top, or to utilize the "frog leg" devices for added stability. The floor of the Trade Mart consisted of large concrete slabs with deep cracks or grooves separating each slab. MOD officials and volunteers were also warned to avoid pulling the scaffold across the cracks in such a way as to lodge a scaffold wheel in the cracks, as such could cause the scaffold to tilt or fall. At trial, plaintiff persistently contended that he received no instructions on the correct use of the scaffold during the day or night of December 16.

The event featured a band, dancing, hors d'oeuvres and a cash bar. Plaintiff testified that he had two drinks with vodka early in the evening but nothing alcoholic after around 8:30 P.M. Clayton Bush testified that he had one drink and "a couple of beers" during the evening, but it was the testimony of Billie Jean Freeman, which this court credits, that Bush had become visibly intoxicated by the end of the evening.

The event was concluded around 11:30 P.M. and most of the participants dispersed at that time. At some point in the evening, Billie Jean Freeman had secured permission from Trade Mart management to defer cleaning up the building until the next morning. She testified that the word had been passed to the clean-up committee, of which Clayton Bush was a member, and that only those in charge of returning tablecloths were working after 11:30 P.M. Bush, however, solicited the help of Hill and began the work of removing the decorations from the high wall and ceiling of the building. On Bush's suggestion, Hill mounted the scaffold to a point near its top and began removing decorations. Bush, acting alone, either pushed or pulled the scaffold at its base to various points on the concrete floor from which Hill could reach the decorations. While Bush was maneuvering the scaffold with Hill positioned high at its top with his feet approximately twenty feet above the floor, a wheel became lodged in a crack in the concrete, causing the scaffold to tilt and Hill to fall. Hill fell some twenty feet to the concrete floor of the building, causing the injuries for which he seeks recovery in this action. His injuries included a crushed right patella (knee cap) which was eventually removed by surgery, a broken left foot, crushed or fused bones in both feet and psychological injuries. Billie Jean Freeman and Janet

Harris, who also had remained after the event, testified that they did not see Bush and Hill using the scaffold, nor did they have any other form of notice that Bush and Hill were engaging in the dangerous and, indeed, unnecessary work with the scaffold until Hill fell.

At the outset, it is necessary for the court to define the scope of any legal duty owed to Hill by MOD. Under Mississippi law, an individual who goes upon the premises of another in answer to the express or implied invitation of the owner or occupier for their mutual advantage is commonly known as a "business invitee." *Lucas v. Miss. Housing Authority No. 8,* 441 So.2d 101, 103 (Miss.1983). To such business invitee the owner or occupier of the premises owes the duty to keep the premises in a reasonably safe and suitable condition, or to warn the invitee of any dangerous conditions which may exist and are reasonably discoverable by the owner or occupier. *Downs v. Corder,* 377 So.2d 603, 605 (Miss. 1979). A "licensee" is one who enters upon the premises of another for his own convenience, pleasure or *benefit,* pursuant to the license or implied permission of the owner. *Lucas,* 441 So.2d at 103. (emphasis added) To such licensee the owner or occupier of the premises owes no duty of care other than to refrain from willful or wanton negligence. *Archie by Archie v. Illinois Cent. Gulf R. Co.,* 709 F.2d 287, 289 (5th Cir. 1983) (applying Mississippi law). Furthermore, although an injured party may have entered the premises as an invitee, he may lose that status and acquire that of a licensee if he exceeds the scope or purpose of the invitation by proceeding into an area not included in the invitation. *Hoffman v. Planters Gin Co., Inc.* 358 So.2d 1008, 1011 (Miss.1978).

■ Thus, assuming that Hill was an invitee by virtue of his producing a ticket to enter the Trade Mart Building for the December 16 event, the court is of the opinion that he acquired the status of a licensee when he stayed on the premises for purposes of cleaning up after the event. Hill's own testimony indicated that he stayed on to clean up solely upon the request of Bush, and that his purpose in participating in any facet of the event was to benefit him in his working relationship with Bush, his supervisor at FGIC. Mounting the scaffold clearly exceeded the scope or purpose of the invitation extended through the ticket. Therefore, the court is of the opinion that Hill occupied the status of a licensee, as defined under Mississippi law, at the time of his fall.

■ The court recognizes, however, that the scope of MOD's duty to Hill is not precisely established by terming Hill a mere licensee. Indeed, even if the court were to assume that Hill remained an invitee up to the time of his injury, such status would not require a finding of liability on the part of MOD. As the Mississippi Supreme Court stated in *Hoffman,* 358 So.2d at 1012:

> The legal distinctions between a licensee and invitee have little significance once the presence of a person upon the possessor's premises is known and there are affirmative actions involving him. Status relates largely to negligence for the condition of premises, that is, passive negligence and not to active or affirmative negligence emanating from action or inaction by the possessor with knowledge of an individual's presence.

Once the presence of a licensee is known to the occupier of the premises, there is a simple negligence exception to the general duty of care to a licensee that applies against a landowner whose active negligence subjects the licensee to an unusual danger. *Archie by Archie,* 709 F.2d at 289. The court notes that there was no evidence introduced at trial to show that Billie Jean Freeman, Janet Harris or any other MOD official was aware of Bush's and Hill's unsolicited use of the scaffold between the end of the event and Hill's fall. The fact that Bush was an unpaid member of the MOD board of directors is insufficient to charge MOD with knowledge of such use, as it was undisputed that Bush was not present at the Trade Mart before approximately 8:30 P.M. on the eve-

ning of December 16 and never received instruction on the use of the scaffold. Moreover, the court credits the testimony of Janet Harris, Billie Jean Freeman and Edward Smith and finds that Charles Hill had knowledge of the instructions on the correct use of the scaffold at the time he and Clayton Bush undertook to utilize it after the event concluded. Any arguable duty to exercise reasonable care to warn Hill of the dangers inherent in using the scaffold was thus fulfilled when MOD officials and volunteers passed the instructions on to him that day. In *Hoffman,* the court stated that once such warning is given the licensee,

> [t]he possessor is entitled to expect that such warning will cause the licensee to avoid the danger unless the possessor realizes, or should realize, that the warning would be ineffective, either because the danger is so imminent that the licensee would have no opportunity to avoid it or because the licensee does not hear the warning or is not able or does not intend to take advantage of it.

358 So.2d at 1013 (citing *Restatement (Second) Torts,* § 341 (comment) (1965)).

No evidence was adduced at trial to indicate that MOD knew or should have known that the instructions it disseminated regarding the use of the scaffold would be ineffective or ignored. In addition, as stated previously, the court credits the testimony of Janet Harris, Billie Jean Freeman and Edward Smith that Hill received the instructions and indeed repeated them to other users of the scaffold on that day. Therefore, the court concludes that any duty arguably owing from MOD to Hill, a licensee, was satisfied by the repeated publication of the scaffold instructions in the presence of Hill. Because the court determines that no breach of any duty on the part of MOD was proven by the evidence, the remaining defenses raised by MOD, namely the "open and obvious" nature of

the danger represented by the scaffold and assumption of risk, will not be discussed.[2]

■ the court also rejects plaintiffs' contention that MOD is liable under the theory of *respondeat superior* for the negligence of its agent, Clayton Bush. As stated, Bush was an unpaid volunteer member of the board of directors of the Mississippi chapter of MOD. His primary responsibility in that position was to aid MOD in its fund-raising efforts. On December 16, his assigned duties as a member of the decorations committee were to provide the Christmas tree and some decorations for the event. At no point during the evening did any individual connected with MOD instruct or request that Bush undertake clean-up operations immediately after the event. Indeed, the evidence indicated that contrary instructions were passed to the members of the decorations committee, but that Bush proceeded with clean-up operations with Hill because he would not be able to return the next morning. Thus, the court is of the opinion that Bush's actions immediately following the event far exceeded the scope of his actual or apparent authority as a member of the MOD board, and that MOD cannot be held vicariously liable for his negligence. *See Castle Fabrics, Inc. v. Fortune Furniture Mfrs.,* 459 F.Supp. 409 (N.D.Miss.1978); *Clow Corp. v. J.D. Mullican, Inc.,* 356 So.2d 579 (Miss. 1978).

The court does not doubt the seriousness of Hill's physical injuries, nor is it unsympathetic to his plight. Under Mississippi law, however, a plaintiff suing on a negligence theory must prove the existence of four elements: (1) duty, (2) breach of duty, (3) causation and (4) damage. *See J.C. Penney Co. v. Sumrall,* 318 So.2d 829 (Miss.1975). Plaintiff's proof in this action failed to establish that defendant breached any duty cognizable under Mississippi law.

**2.** The court expressly reject MOD's contention that the doctrine of charitable immunity, abrogated in *Mississippi Baptist Hospital v. Holmes,* 214 Miss. 906, 55 So.2d 142 (1951), is applicable under the facts of this case. Accordingly, the

issue of maintenance of liability insurance by defendant is not relevant and the objection to testimony with reference to liability insurance is sustained.

Accordingly, the court is of the opinion that plaintiff's complaint in this cause should be dismissed. A separate judgment conforming with this opinion shall be submitted according to the local rules.