# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2009

Charles R. Fulbruge III
Clerk

No. 08-61029
Summary Calendar

LAURA LASCOLA, Individually, and as Sole Heir and Next of Kin to Norma Dale Massa, deceased

Plaintiff - Appellant

v.

BARDEN MISSISSIPPI GAMING LLC dba Fitzgeralds Casino Hotel-Tunica; TUNICA COUNTY MISSISSIPPI; TUNICA COUNTY SHERIFF'S DEPARTMENT, A division of Tunica County, MS

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:06-CV-080

Before KING, STEWART and HAYNES, Circuit Judges.

PER CURIAM:[*]

This appeal concerns the tragic disappearance and eventual death of Norma Massa, a sixty-five year-old woman who suffered from dementia. Massa disappeared during a trip with her assisted-living facility to Fitzgerald's Casino in Tunica, Mississippi. Her body was discovered approximately one year later

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

in a wooded area some two miles from the casino. Laura Lascola, the daughter and sole heir of Massa, brought suit against Barden Mississippi Gaming, LLC d/b/a Fitzgerald's Casino Hotel-Tunica (Fitzgerald's) and Tunica County, Mississippi (Tunica County).[1] She asserted claims of negligence, gross negligence, and intentional infliction of emotional distress against Fitzgerald's. Against Tunica County, Lascola alleged reckless disregard under the Mississippi Tort Claims Act, intentional infliction of emotional distress, and violation of Massa's constitutional rights under 42 U.S.C. § 1983. The district court granted summary judgment in favor of Fitzgerald's and Tunica County. Lascola appeals the denial of her reckless-disregard claim against Tunica County and her simple-negligence and gross-negligence claims against Fitzgerald's. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Norma Massa resided at St. Peter Manor, an assisted-living facility in Memphis, Tennessee, until her death. On December 13, 2004, Massa embarked on a bus trip to Fitzgerald's Casino in Tunica, Mississippi with seventeen other residents. The bus arrived at Fitzgerald's at approximately 11:00 a.m. According to video surveillance from Fitzgerald's security cameras, Massa left the casino around 12:26 p.m. and wandered around the rear parking lot by herself. The surveillance video shows a security vehicle owned by Fitzgerald's approaching Massa but, because of a glitch in the tape, it is unclear whether the security guard spoke to her.[2] At around 1:00 p.m., Massa walked toward the

---

[1] Lascola initially sued several members of the Tunica County Sheriff's Department in their individual capacities. The district court dismissed her claims against those individuals, and Lascola has not appealed that ruling. Lascola also named the Tunica County Sheriff's Department as a defendant. She conceded to the trial court that the Sheriff's Department is not a separate governmental entity, making Tunica County, Mississippi the proper defendant.

[2] Eleven seconds of the security tape were omitted due to what defendant has characterized as a recording error. Lascola's expert was unable to find any basis to conclude that the loss of the eleven seconds was intentional. Lascola has abandoned her argument that

2

Tunica River Park Museum and disappeared from the casino and surveillance video.

At 3:30 p.m., the remaining St. Peter Manor residents boarded the bus to return home. When Massa did not appear, the bus driver had the casino page her. She did not respond. At 3:45 p.m., the bus departed for Memphis without Massa. St. Peter Manor then notified Laura Lascola, Massa's daughter, that her mother had failed to board the bus or respond to the page. Lascola immediately left her home in Memphis and drove to Tunica. Along the way, Lascola called Fitzgerald's security department to alert them that her mother was missing and suffered from a form of dementia. Lascola also called the Tunica County Sheriff's Department and informed them of her mother's disappearance, her disability, and the fact that she had previously wandered away from a fair only to reappear seven miles from her original location.

Lascola arrived at Fitzgerald's at 5:00 p.m. and met with members of the casino's security team, as well as Katie Johnson, a deputy sheriff from the Tunica County Sheriff's Department. They searched Fitzgerald's property for Massa but did not locate her. Lascola asked the Sheriff's Department to conduct a full-scale search of the surrounding area using dogs and helicopters. Deputy Sheriff Johnson declined to do so for twenty-four hours, incorrectly citing a department policy regarding missing adults.[3] A full-scale search was conducted the following day at 1:00 p.m. Massa was not located. Another search was

___

Fitzgerald's tampered with the security tape and that she is entitled to a spoliation inference. On appeal, she argues instead that the gap in the recording demonstrates that the security guard likely spoke with Massa and observed that she was disoriented and in need of assistance.

[3] The parties do not dispute that the Sheriff's Department policy requiring twenty-four hours to elapse before searching for a missing adult does not apply to individuals with a mental disability. The policy states that if a person with a mental disability is reported missing, a missing-persons report should be created and forwarded to the appropriate officials *at that time*. The primary investigator, with the Sheriff's approval, may then initiate a full-scale search effort.

performed by the Sheriff's Department on December 18, 2004, but without success.[4]

On January 1, 2006, a hunter discovered Massa's remains in a wooded area approximately two miles from Fitzgerald's.[5] An autopsy was performed, but the doctor was unable to determine the cause of death and indicated only that Massa's death was "unusual/suspicious."

On May 4, 2006, Lascola, individually and as the sole heir and next of kin to Norma Massa, filed suit against Fitzgerald's and Tunica County in federal district court. Lascola alleged that Fitzgerald's was negligent and grossly negligent by failing to assist Massa when she wandered into the casino parking lot. Lascola argued that Tunica County recklessly disregarded Massa's safety by refusing to initiate an immediate full-scale search for Massa after she disappeared. Lascola also asserted claims against Tunica County for deprivation of Massa's constitutional rights under 42 U.S.C. § 1983 and for intentional infliction of emotional distress.

The defendants moved for summary judgment on all counts. The district court found that no genuine issue of material fact remained on Lascola's negligence, other tort, and § 1983 claims and granted the defendants' motions for summary judgment. The district court also concluded that Lascola's reckless-disregard claim against Tunica County was barred by the statute of limitations.

---

[4] In her deposition, Lascola stated that a woman that she believed was her mother called and left a message several days after she disappeared. There is also evidence that Massa may have boarded another bus to different area casinos and even traveled back to Memphis at some point prior to her death. In reviewing the district court's grant of summary judgment, we do not rely on this evidence but note that it calls into question whether Massa exhibited any visible signs of dementia or that any negligence by Fitzgerald's or Tunica County caused Massa's death.

[5] Because of the time that had elapsed since Massa's disappearance, her body was not easily identified. It was not until January 12, 2006, when Massa's dental records were processed, that the body located in the woods was positively identified as Massa's.

Lascola now appeals only the district court's grant of summary judgment on her simple and gross-negligence claims against Fitzgerald's and her reckless-disregard claim against Tunica County.

## II. STANDARD OF REVIEW

In reviewing the district court's ruling in this diversity action, this court applies Mississippi substantive law. *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). We review a grant of summary judgment de novo. *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 555 (5th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When reviewing a grant of summary judgment, we view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006). However, to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). We may "affirm a grant of summary judgment on any grounds supported by the record and presented to the court below." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

## III. DISCUSSION

On appeal, Lascola argues that we must reverse the grant of summary judgment in favor of Fitzgerald's and Tunica County. She contends that she produced evidence sufficient to create a genuine issue of material fact about whether Fitzgerald's was negligent. She also argues that the district court erred

in dismissing her claim for reckless disregard against Tunica County as barred by the applicable statute of limitations.

## A. Whether the district court erred by granting summary judgment in favor of Fitzgerald's

Lascola maintains that the district court erred by granting summary judgment to Fitzgerald's based on its finding that Lascola could not establish (1) that Fitzgerald's had knowledge of Massa's dementia, or (2) that Fitzgerald's owed Massa a special duty of care because she was disabled and living in an assisted-living facility. She claims that a genuine issue of material fact exists about whether Fitzgerald's owed Massa a duty of care as a premises owner and breached that duty. She also alleges a separate general negligence claim—that Fitzgerald's is liable for the alleged breach of the security guard's alleged duty to assist confused people in the Fitzgerald's parking lot.

### 1. Premises Liability

A premises owner has a duty of care to all people who come upon its land, but Mississippi law creates a distinction in the standard of care owed to such people based upon their status as either invitees, licensees, or trespassers. *Hudson v. Courtesy Motors, Inc.*, 794 So. 2d 999 (Miss. 2001); *see also Massey v. Tingle*, 867 So. 2d 235, 239 (Miss. 2004) (noting that Mississippi premises-liability law requires a determination of the legal status of the injured person, the relevant duty of care, and the defendant's compliance with that duty). Because Fitzgerald's invited the residents of St. Peter Manor to the casino, Massa is properly considered an invitee. *Corley v. Evans*, 835 So. 2d 30, 37 (Miss. 2003) ("[A]n invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage."). A premises owner owes an invitee a duty to "keep the premises reasonably safe, and when not reasonably safe, to warn only where there is hidden danger or peril that is not in plain and open view." *Id.* at 37-38;

*see Wood v. RIH Acquisitions MS II LLC*, 556 F.3d 274, 275 (5th Cir. 2009)("The premises encountered by a business invitee must be reasonably safe, and when they are not, the invitee is to be warned of perils that are not in plain view."). But a premises owner does not insure the safety of persons invited onto the property. *Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1199 (Miss. 2008).

Lascola asserts that Fitzgerald's had a duty to warn Massa of any hazards existing on or around its property. She claims that, in this case, the security guard had a duty to warn Massa about "the swollen river stage and upon which the River Museum was located." But neither the River Museum nor the wooded area where Massa was found was located on Fitzgerald's property. Lascola cites no authority for the proposition that Fitzgerald's had a duty to warn invitees of hazardous conditions located on another's property. *See, e.g.*, *Int'l Paper Co. v. Townsend*, 961 So.2d 741, 751 (Miss. Ct. App. 2007) (finding no duty to warn invitee of a hazard that does not exist on the premises); *Higginbotham v. Hill Bros. Constr. Co., Inc.*, 962 So. 2d 46, 56-57 (Miss. Ct. App. 2006) (holding that a premises owner has no duty to warn of or remedy dangerous condition that it has no responsibility or control over).

Lascola further argues that Fitzgerald's "failed to be proactive" and that it had a duty to render assistance to Massa to prevent her from wandering off and disappearing. While Mississippi law recognizes a duty of the premises owner to render aid to an invitee injured on its premises, this duty arises only when the premises owner learns of the invitee's injury and only in the face of an actual injury. *See Spotlite Skating Rink, Inc. v. Barnes*, 988 So. 2d 364, 369-70 (Miss. 2008). Lascola points to no Mississippi law imposing a general "duty to be proactive" on a land owner. She cites no evidence showing that Massa was injured on Fitzgerald's premises. Thus, this is not a case of "failure to render first aid." *Cf. Grisham v. John O. Long V.F.W. Post, No. 4057, Inc.*, 519 So. 2d

413, 417 (Miss. 1988)(imposing a duty on a premises owner to aid a person "once they learned she had been injured on [their] premises."). The mere fact that Massa was walking around the casino parking lot in cold weather does not establish that Fitzgerald's had the requisite knowledge of Massa's condition to trigger a duty to render assistance.[6] Nor is her allegedly disoriented condition an "injury" that occurred on Fitzgerald's premises.[7]

Finally, Lascola claims that Fitzgerald's had a duty not to subject Massa to increased danger or hazard under *Hoffman v. Planters Gin Co.*, 358 So. 2d 1008, 1013 (Miss. 1978). In *Hoffman*, a fourteen year-old boy accompanied his father to work transporting cottonseed from the defendant company's gin to an oil mill. The boy, while assisting his father, slipped and fell into a revolving auger, causing him to lose his leg. The Mississippi Supreme Court held that the trial court erred in granting a peremptory instruction based on intentional or wanton negligence. *Id.* at 1013. The court stated: "We think the premises owner is liable for injury proximately caused by his affirmative or active negligence in the operation or control of a business which subjects either licensee or invitee to unusual danger, or increases the hazard to him, when his presence is known and that the standard of ordinary and reasonable care has application." *Id.* But Lascola has not asserted a factual basis for her claim that Fitzgerald's subjected

---

[6] Lascola relies entirely on the fact that Tunica County was experiencing cold weather on December 13, and the security tape does not reveal whether Massa was wearing a winter coat at the time she disappeared. Fitzgerald's introduced evidence that the mean temperature on December 13, 2004 was 44 degrees Fahrenheit. Lascola does not dispute this evidence but asserts that the cold temperature contributed to Massa's disappearance and death. But Lascola has presented no evidence that a temperature of 44 degrees Fahrenheit constitutes a dangerous condition or that Massa's presence outside without a winter coat put Fitzgerald's on notice that she was in distress.

[7] According to Lascola, Fitzgerald's had a duty to render aid to Massa that arose "when Fitzgerald's security guard became aware of Ms. Massa's presence outdoors in the casino's restricted area under the unusually inclement weather conditions existing on December 13, 2004." Walking around in cold weather is not an "injury."

Massa to any danger—or increased danger—by inviting her to the casino. Lascola has failed to point to a single act of affirmative negligence by Fitzgerald's that caused Massa's death. *See Newell v. S. Jitney Jungle Co.*, 830 So. 2d 621, 623 (Miss. 2002) ("[N]egligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof.") (citation and quotations omitted). In sum, Lascola has not alleged a factual basis from which we can conclude that Fitzgerald's had a duty to warn or render assistance to Massa.

2. General Negligence Based Upon Breach of a "Security Officer Duty of Care"

To prevail on a negligence claim under Mississippi law, a plaintiff must establish (1) duty, (2) breach of that duty, (3) causation, and (4) injury. *Patterson v. Liberty Assocs., L.P.*, 910 So. 2d 1014, 1019 (Miss. 2004); *see also Crain v. Cleveland Lodge 1532, Order of the Moose, Inc.*, 641 So. 2d 1186, 1189 (Miss. 1994) (holding that to demonstrate that the district court erred in granting summary judgment, appellant must show a genuine issue of material fact exists on each of these elements). Lascola suggests that security guards have a special duty to "care for" casino patrons who live in assisted living. She acknowledges that "[t]here is currently no law in Mississippi directly on point." Nonetheless, she argues for some generalized duty on security guards to "make inquiry" of people wandering in the parking lot. We decline the apparent invitation to create a new duty under Mississippi law.

Even if there were such a duty, Lascola failed to put forward any competent evidence that the security guard knew or should have known that Massa was experiencing an episode of disorientation.[8] Instead Lascola relies on

---

[8] In contrast, Fitzgerald's has presented testimony from numerous witnesses that Massa did not exhibit any abnormal symptoms on the day of her disappearance.

the gap in the security tape to assert that the security guard spoke with Massa and, during the eleven seconds of missing tape, learned that she suffered from dementia. But Lascola has presented no witnesses or testimony to support her claim that Massa was visibly disoriented, and the mere fact that Massa was not wearing a winter coat outside[9] does not support such an inference. *Neely v. N. Miss. Med. Ctr., Inc.*, 996 So. 2d 726, 729 (Miss. 2008) ("It is elementary that the plaintiff bears the burden of proving his claim and cannot simply rely on his or her pleadings when responding to a motion for summary judgment."); *see also Luvene v. Waldrup*, 903 So.2d 745, 748 (Miss. 2005) ("The non-moving party's claim must be supported by more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict."). Lascola has put forth no factual basis for her claim that Fitzgerald's security guard knew or should have known of Massa's alleged state of distress.[10] We conclude no special duty of care existed, and no competent evidence supports a claim of breach of any such duty. We AFFIRM the district court's summary judgment in favor of Fitzgerald's.[11]

---

[9] The parties dispute whether the security tape shows Massa wearing a coat or something less protective.

[10] Lascola also asserts that the security guard failed to act as would a reasonable person under the same or similar circumstances. Because we conclude that Lascola failed to demonstrate that the security guard knew or should have known that Massa was disoriented or disabled, we cannot say that the security guard acted unreasonably.

[11] It is unclear whether Lascola intended to appeal the summary judgment on gross negligence. In any event, there is no evidence in the record to support such a claim – that Fitzgerald's took actions that knowingly exposed Massa to injury. Absent such evidence, Lascola cannot survive summary judgment on her gross-negligence claim. *See, e.g.*, *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1072 (Miss. 1996) (noting that a claim of gross negligence requires a willful or malicious wrong).

## B. Whether the district court erred by granting summary judgment in favor of Tunica County

Lascola contends that the district court erred in granting summary judgment for Tunica County on the ground that the statute of limitations barred her reckless-disregard claim. The district court based its ruling on *Caves v. Yarbrough*, No. 2006-CA-01857, 2007 WL 3197504 (Miss. Nov. 1, 2007), which held that the Mississippi Tort Claims Act (MTCA) did not contain a discovery rule tolling the applicable statute of limitations. At the time the district court made its decision, the Mississippi Supreme Court had granted rehearing of the case. The Mississippi Supreme Court subsequently withdrew the earlier *Caves* opinion as contrary to precedent and stare decisis. *Caves v. Yarbrough*, 991 So.2d 142 (Miss. 2008) (holding that the statute of limitations for claims brought under the MTCA begins to run on the date that all elements of a tort exist and recognizing a discovery rule for MTCA claims). On appeal, Tunica County concedes that it misinterpreted the law but argues that the grant of summary judgment should be affirmed because Lascola has failed to raise a genuine issue of material fact on the merits of her reckless-disregard claim.[12]

Mississippi law provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury . . .

---

[12] Tunica County also asserts that Lascola waived her argument that the ninety-day tolling provision of the MTCA applies to her claim. This is not so. Lascola presented the argument to the district court and it was rejected based on the improper application of *Caves*. Lascola properly raised the issue on appeal by asserting that the discovery rule tolls the statute of limitations until Massa's remains were discovered. Therefore, her reckless-disregard claim is properly before this court.

Miss. Code Ann. § 11-46-9(1)(c).

The parties agree that Deputy Johnson was lawfully engaged in the performance of her duties as a law enforcement officer when she incorrectly stated that Tunica County policy required twenty-four hours to elapse before a full-scale search could be conducted. The parties also agree that Massa was not engaged in criminal activity at the time of her injury. Thus, the only issue is whether Deputy Johnson acted with reckless disregard.

The Mississippi Supreme Court has defined reckless disregard as "willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *Turner v. City of Ruleville*, 735 So. 2d 226, 230 (Miss. 1999). Reckless disregard is generally "accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Maye v. Pearl River County*, 758 So. 2d 391, 394 (Miss. 1999). In assessing whether a law enforcement officer acted with reckless disregard, this court must examine the totality of the circumstances, judging the officer's conduct by an objective standard. *Phillips v. Miss. Dep't of Pub. Safety*, 978 So. 2d 656, 661 (Miss. 2008).

Lascola asserts that Tunica County, through Deputy Johnson, acted with reckless disregard to Massa's well-being because Deputy Johnson failed to conduct a full-scale search for Massa within twenty-four hours of her disappearance in violation of Department policy. Lascola asserts that Deputy Johnson was aware of Massa's dementia and that she had wandered off before, placing her at risk of injury. According to Lascola, these facts are sufficient to create a genuine issue of material fact on her reckless-disregard claim.

But Lascola does not dispute Deputy Johnson's sworn testimony that she conducted an initial search of the area surrounding Fitzgerald's immediately after speaking with Lascola, issued a Be On the Look Out (BOLO) notice for an individual matching Massa's description, and drafted a police report. Tunica County admits that Sheriff's Department policy requires law enforcement to

12

conduct a full-scale search for missing adults with mental disabilities and acknowledges that Deputy Johnson incorrectly cited the general rule requiring twenty-four hours to lapse before searching for a missing adult. But Deputy Johnson's failure to request a canine unit and the assistance of helicopters does not amount to knowingly or intentionally doing a wrongful act. There is a distinction between disregarding the department policy and disregarding the risk to an individual. The evidence in the record shows that Deputy Johnson did not disregard a known risk to Massa or act with indifference to the consequences. Indeed, she took action to locate Massa and assist Lascola in her efforts to do the same. Lascola's allegations, taken in a light most favorable to her, establish that Deputy Johnson may have been negligent in failing to conduct a full-scale search but do not support a claim for reckless disregard. *See, e.g.*, *City of Greenville v. Jones*, 925 So. 2d 106, 118 (Miss. 2006) (finding that inadequate investigation of bomb threat suspect or failure to take certain actions during the course of an investigation amounts to a negligence claim, not reckless disregard).

We conclude that no reasonable juror could find that Tunica County acted with reckless disregard to Massa's safety. Therefore, the district court did not err in granting summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Fitzgerald's and Tunica County on Lascola's negligence and reckless-disregard claims.

AFFIRMED.