# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01518-SCT

*LINDA TAYLOR, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF JOHN JASON GABLE, DECEASED*

*v.*

*MISSISSIPPIAN RAILWAY, INC.*


| | |
|---|---|
| DATE OF JUDGMENT: | 8/28/2001 |
| TRIAL JUDGE: | HON. FRANK A. RUSSELL |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROY JOSEPH FARRELL |
| ATTORNEY FOR APPELLEE: | J. DOUGLAS FORD |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 09/19/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/10/2002 |


**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. On April 9, 1998, John Jason Gable was riding his Yamaha four-wheel all-terrain vehicle (ATV) between the rails of a railroad track owned by the Mississippian Railway, Inc. (Mississippian) when he hit a pile of rocks and lost control of his ATV. Gable died as a result of the accident. Linda Taylor, Gable's mother, filed this wrongful death action against the Mississippian contending that the Mississippian was liable for the death of her son because it was negligent in failing to maintain the tracks and that the negligence created a hazardous condition that resulted in the accident that caused the death of Gable. Taylor also contended that the Mississippian was negligent because it failed to warn the "traveling public" of the alleged danger existing on the railroad tracks.

¶2. Following discovery, the Mississippian moved for summary judgment contending that Gable was trespassing at the time of the accident and that there was no proof that the Mississippian willfully and wantonly injured him. The Mississippian contended that there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law. The Circuit Court of Itawamba County, the Honorable Frank A. Russell, presiding, agreed with the Mississippian and granted the motion for summary judgment by order dated August 28, 2001.

## FACTS

¶3. On the morning of April 9, 1998, Gable, a 19 year-old man, left his home, located in the Ironwood Bluff subdivision in Itawamba County where he had resided with his mother for approximately one month, to meet Susan Grimes, a fellow employee at Home Care Supply in Tupelo, to catch a ride to work. Gable, along with Grimes, who lived in Smithville, Mississippi, carpooled to work with other individuals who lived in the vicinity. On this particular morning, Gable was without a ride to work or to the carpool; therefore, he rode his ATV in a southerly direction on the railroad tracks from his subdivision toward Smithville. His mother told him not to ride his ATV on the highway. According to the accident report, Gable hit a pile of gravel about 12 inches high and apparently went airborne, causing him to be thrown from the ATV. He suffered massive trauma to his head. According to his mother, Gable typically wore his helmet; however, she stated that he was not wearing his helmet when she saw his body at the scene of the accident. The accident occurred about one mile south of the Ironwood Bluff subdivision crossing. "No Trespassing" signs were posted sometime after the occurrence of the accident.

¶4. Taylor contends that ATV riders consistently used the Mississippian Railway track as a pathway. She stated in her deposition that when she and her son lived in Smithville, before they moved to Ironwood Bluff, her son and a friend of his who lived in Ironwood would frequently use the railway tracks to ride ATVs to each other's home. Taylor stated that it was common knowledge that the trains only ran on Mondays, Wednesdays, and Fridays. However, she stated that people used the railway as a path on a daily basis. She named five people, besides her son, who rode down the tracks on ATVs. She stated that there were no signs stating that a person could not ride an ATV on the tracks, and if a person sat on the tracks, "sooner or later someone would come down the track" riding an ATV. She believed that the railroad knew that people used the railway as a path.

¶5. In his deposition testimony, William Carlisle, an engineer and manager for the Mississippian, stated that he could only remember seeing 5 ATVs within the past 6-8 years on the railways. Carlisle stated he did not see any ATVs in the area within the vicinity of the accident. Most of the ATVs he saw were south of Smithville. Color photographs of the railroad tracks were presented during discovery. Taylor contends that the photographs depict areas on the track that are worn from the frequent use of ATVs. On the other hand, Carlisle stated that the worn areas inside the tracks did not look like ATV tracks to him. He stated that the worn areas looked like where the rock has settled where a tamper machine compacted it. A surfacing machine lifts the lines and straightens the track, as well as forces the rock under the crossties by a squeezing vibrating tamper. Carlisle stated that he was not aware that people were utilizing the tracks as a pathway.

¶6. According to Carlisle's deposition, the Mississippian did deposit about 8-10 inches of rock on the railway that was intended for Safe-Trac, a company that repairs railway tracks. The rock could have been placed on the track "as long as a week or as little amount of time as 24 hours" before Safe-Trac arrived to repair the tracks by leveling and straightening the rock. Safe-Trac intended to begin the repairs on the day of the accident.

¶7. Charles Holloway, a Mississippian locomotive engineer, stated in his deposition testimony that he had seen about four ATVs on the tracks since 1986. He stated that, once, he had seen an ATV on the tracks closer to Smithville and that he reported seeing that particular ATV to the office. As for the photographs of the tracks, Holloway also stated that the worn path inside the tracks was where the tampering machine vibrated the rock down under the railroad. Holloway stated that they had deposited rocks about 6-8 inches high sometime before the accident. He testified that the train would probably just plow over any rocks piled higher than 9 inches. Holloway testified that he would be surprised to know that people were riding their

ATVs up and down the railroad tracks.

¶8. On appeal, Taylor sets forth two issues:

> **I. DID THE TRIAL COURT ERR IN DETERMINING THAT THE ROCK PLACED ON THE RAILROAD CONSTITUTED A "CONDITION OF THE PREMISES" AND THAT THE MISSISSIPPIAN'S ACTIONS, IN THAT REGARD, CONSTITUTED PASSIVE NEGLIGENCE, AS OPPOSED TO ACTIVE NEGLIGENCE?**
>
> **II. DID THE TRIAL COURT ERR IN FAILING TO RECOGNIZE THAT THE MISSISSIPPIAN WAS AWARE OF ATV USE ON ITS TRACKS, AND THAT, AS SUCH, THE ATV RIDERS WERE LICENSEES AND THE MISSISSIPPIAN HAD A DUTY TO WARN THE ATV RIDERS OF OBSTRUCTIONS.**

## DISCUSSION

¶9. This Court employs a de novo standard of review when reviewing a lower court's grant of summary judgment. *Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So. 2d 1351, 1354 (Miss. 1998). This Court has held that it is better to err on the side of denying a motion for summary judgment if a doubt exists as to whether a genuine issue of material fact exists. *Smith County Sch. Dist. v. McNeil*, 743 So. 2d 376, 379 (Miss. 1999).

> **I. DID THE TRIAL COURT ERR IN DETERMINING THAT THE ROCK PLACED ON THE RAILROAD CONSTITUTED A "CONDITION OF THE PREMISES" AND THAT THE MISSISSIPPIAN'S ACTIONS, IN THAT REGARD, CONSTITUTED PASSIVE NEGLIGENCE, AS OPPOSED TO ACTIVE NEGLIGENCE?**

¶10. The duty owed by a landowner to a trespasser or a licensee is to not willfully or wantonly injure them, a standard of care involving conscious disregard of a known and serious danger. *Saucier,* 708 So. 2d at 1355 & 1357. Taylor contends that the *Hoffman* ordinary negligence exception to the willful or wanton standard should have been applied in this case. *See Hoffman v. Planters Gin Co.*, 358 So. 2d 1008, 1012 (Miss. 1978). For the ordinary negligence standard to apply, Gable would have to be considered a licensee.

¶11. The Mississippian has at all times contended that Gable did not have permission from the Mississippian to use its tracks; therefore, it states that Gable was a trespasser. The trial court agreed that Gable was a trespasser. Based upon our review, this Court also agrees that Gable was a trespasser. Therefore, any discussion related to the *Hoffman* exception is moot.

¶12. In *Adams ex rel. Adams v. Fred's Dollar Store of Batesville*, 497 So.2d 1097 (Miss. 1986), this Court ruled that the trial court did not err in finding there was no genuine issue of material fact as to Melinda Adams's status as a trespasser. Adams was injured while driving her car on a private store parking lot during night hours when the store and parking area were obviously closed to the public. *Id*. at 1098. Adams did not have permission to use the parking area as a place to turn around. Similarly, Gable could not have had any expectation that he had license to use the insides of the railroad tracks as a public pathway.

¶13. The Mississippian states that Taylor has submitted no evidence that shows that the Mississippian was aware of ATV activity on the railroad tracks in the Ironwood Bluff area. The limited amount of ATV-riding

that Carlisle and Holloway had witnessed was either near Smithville or south of Smithville.

¶14. Carlisle's and Holloway's depositions reveal that they never actually saw any ATVs in the Ironwood Bluff area or near the scene of the accident. Furthermore, when Carlisle and Holloway saw ATVs on the railroad tracks, it is not clear whether the ATVs were merely crossing the railroad tracks or actually riding down the center of the tracks. Although the record reveals that Holloway witnessed and reported perhaps one ATV utilizing the tracks as a path, this was closer to Smithville and not near the Ironwood Bluff area or the accident area.

¶15. The Mississippian also argues that the rock pile that allegedly caused the accident was a condition of the premises. The trial court stated that rock was an integral part of any railroad tracks and could be found at any point or place up and down a railroad line. The trial court concluded that because the rocks were a "condition of the premises," the ordinary negligence exception would not apply. Furthermore, the Mississippian contends that the rock pile that allegedly contributed to the accident was neither hidden nor concealed. Again, due to Gable's status as a trespasser, the *Hoffman* exception is not applicable, and whether the rocks were a condition of the premises is not relevant.

¶16. Taylor cites *Archie v. Illinois Cent. Gulf R.R.*, 709 F.2d 287 (5th Cir. 1983) to support her argument that the rock pile was not a condition of the premises and constituted active negligence. In *Archie*, while attempting to cross a railroad in Jackson, Mississippi, a young boy was badly burned when he fell on burning crossties that the railroad allegedly placed in a ditch. *Id.* at 287. The Mississippian, on the other hand, cites *Davis v. Illinois Cent. R.R.*, 921 F.2d 616 (5th Cir. 1991) (applying Mississippi law) in support of its argument that the pile of rocks was a condition of the premises. In *Davis*, the plaintiff was injured when he tripped on a 4 inch spike that protruded from a railroad tie.

¶17. The distinguishing features of both *Archie* and *Davis* are that these cases involved plaintiffs who were either licensees or who were able to present a jury question as to their status. While these cases might be determinative if Gable were considered a licensee, they are not applicable to the case sub judice, as Gable's status was that of a trespasser, not a licensee.

¶18. This Court finds that summary judgment was appropriate in the case sub judice. The evidence clearly supports a finding that Gable was a trespasser. Taylor's evidence does not reveal that the Mississippian was aware that ATV riders were using the railroad near the Ironwood Bluff subdivision. Because this Court finds that Gable was a trespasser, there is no further need to address Taylor's contention that Gable was a licensee.

### II. DID THE TRIAL COURT ERR IN FAILING TO RECOGNIZE THAT THE MISSISSIPPIAN WAS AWARE OF ATV USE ON ITS TRACKS, AND THAT, AS SUCH, THE ATV RIDERS WERE LICENSEES AND THE MISSISSIPPIAN HAD A DUTY TO WARN THE ATV RIDERS OF OBSTRUCTIONS.

¶19. This issue was discussed along with Issue I. This Court finds that the trial court did not err in its ruling that the Mississippian was unaware that ATV riders were riding down the inside of the railroad tracks for public passage near the Ironwood Bluff subdivision. Therefore, Gable was appropriately labeled a trespasser.

### CONCLUSION

¶20. Based on the foregoing reasons, this Court affirms the trial court's order granting summary judgment to the Mississippian.

¶21. **AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**