GULF REFINING Co. *et al. v.* MOODY.

(Division A.   April 1, 1935.)

[160 So. 559.   No. 31599.]

**E. J. Gex**, of Bay St. Louis, and **Carl Marshall**, of Gulfport, for appellant.

**Gex & Gex**, of Bay St. Louis, for appellee.

**McGowen, J.,** delivered the opinion of the court.

In the circuit court of Hancock county, Madeline Moody, a minor, appearing therein by her next friend and father, brought an action at law against the Gulf Refining Company, a corporation, organized under the laws

of the state of Texas, but legally qualified to do business and having a designated agent in the state of Mississippi, F. N. Franovich and Willard Stewart, defendants, resident citizens of Louisiana. The plaintiff, the appellee, is also a resident citizen of Bogalusa, Louisiana. The appellee alleges negligence on the part of the appellant as master, Franovich as its superior officer, and of Stewart as its servant, in that Franovich was engaged in his duty of inspecting a filling station owned by the appellant company, and that, while so engaged, he directed the cleaning of its lamps, including a large lamp globe or shade belonging to the appellant, which had been placed by it upon a pole some eight or ten feet high in front of the filling station by one Stewart, whom he had engaged to undertake the cleaning of same; that in order to clean the lamp globe it was necessary to remove it from the pole, clean it, and replace it thereon; that the said Stewart did so and replaced it on the pole to which it had been attached; but that either because of the fact that the bolts or screws used in holding said lamp globe on had become worn, or of the failure of Stewart to screw such lamp globe on tightly and securely, it suddenly fell on the head of the plaintiff while she was standing underneath or near the lamp globe, injuring her severely.

Process was served upon Willard Stewart in Hancock county, Mississippi. He was a minor, and process was had upon the designated agent of the Gulf Refining Company. Franovich was never served with process.

Upon the return day, before pleading, the Gulf Refining Company appeared and filed its petition to remove the cause to the United States District Court for the Southern Division of the Southern District of Mississippi, alleging a diversity of citizenship, and that the amount sued for was in excess of three thousand dollars. It further averred that no joint cause of action was alleged against the appellant and its servants, Franovich and Stewart,

and that the controversy was separable and severable. The petition for removal did not allege that there was a fraudulent joinder of the individuals above named. With the petition was tendered suitable and proper bond as found by the court; the motion to remove the cause to the federal court was overruled. Thereupon the appellant company filed a plea of the general issue, and, upon the hearing of the cause on its merits, the jury returned a verdict against it, but not against Stewart.

At the conclusion of the evidence, the appellee entered a nonsuit as to Franovich, who had not appeared or been served with process. The motion for a new trial was overruled, and the appellant company appeals here.

The facts briefly stated are: Madeline Moody, a minor, eleven years of age, accompanied her father to a filling station owned, operated, and controlled by the appellant company, situated on the corner of Alabama and Memphis streets in Bogalusa, Louisiana, and while standing outside of the filling station on an elevation four inches higher than the sidewalk and abutting it, the globe of an electric light, suspended about ten feet above her, suddenly fell upon her head, knocking her down and rendering her unconscious. She was immediately taken to a hospital. This occurred about seven o'clock that evening. On that morning Stewart had been employed by Franovich and directed to clean the lamps about the station. Franovich was, according to the evidence, acting along the line of his duty as supervisor of this station. At the time he was cleaning this lamp, Stewart, according to his evidence, found that the screws which held the glass lamp globe to the bracket attached to the pole were worn, and that the glass was cracked, so that it would not hold. He called the attention of Sam Newman, the manager of the filling station to its condition, but was ordered by him to put it up as it was. There was no question but that Stewart knew that the lamp globe was

likely to fall. The lamp globe was of glass and weighed four or five pounds.

The father of the appellee went to the filling station by appointment with Franovich, and on this occasion he was accompanied by his daughter, and was standing within three or four feet of her. There were also present, and in conversation with the appellee, a little boy and his nurse who were seated on this elevation. There were other witnesses almost within arm's reach of the appellee at the time the lamp globe fell upon her head and injured her. It was shown that this particular spot was used by the general public, and patrons of the filling station. The father expected to become the manager of this particular filling station, and Franovich had intended to carry him in his automobile to see a moving picture show, in another town, explaining the different ways of operating filling stations.

As Madeline fell from the effect of the blow on her head, she was caught by a police officer, who, in company with her father, carried her to a hospital where she was given first-aid treatment for wounds on the left side of her head above the left eye. She was able to walk after the treatment, and on the next morning she visited the office of a specialist for the treatment of her ear, where, upon examination, it was found that there was a bloody discharge from her ear, and she was treated from that time until September, just before the trial of this case. On his first examination, the physician testified that the child, at that time, "had a ruptured ear drum with a blood discharge from the ear with a hole in the tympanum;" that upon an examination of her ear on September 5th, he discovered pus coming from her ear, which had become infected, and that there was deafness with "distressing noises and sensations in the ear and retraction of the ear drum." He defined retraction as adhesion to the ear drum—"it is stuck down; it may not

interfere with the hearing, but it is a permanent damage to the ear;'' and renders one susceptible to future deafness; and that where there is permanent deafness the ear drum is retracted. He insisted that the injury to her ear drum was caused by the blow of the lamp globe on her head. He testified, too, that the child had suffered considerable pain during the several months of treatment, and especially so doing the period that the pus discharge came from her ear.

The child testified that before her injury she had had no trouble with her ear, and that since that time she was highly nervous, suffered from noises in her ear, and that she had headaches three or four times a week. Her mother testified to the same effect, and that the child up to the time of the trial would awaken her crying from pain in her ear, and that both of them were kept awake from her suffering. At the time of the trial, the physician attending the appellee thought that there was no deafness.

The appellant, in rebuttal, offered the testimony of a medical expert, introduced out of time, who took issue with appellee's physician in all material particulars, and testified positively that the blow from the lamp globe could not have caused the injury to appellee's ear.

From this statement of the evidence it will be observed that the only conflict therein was the extent of damage suffered by the appellee. At the conclusion of the evidence both sides requested a peremptory instruction, but the case was submitted to the jury.

Instructions were requested by the appellant to the effect that if the appellee was not an invitee of the appellant, she was not entitled to recover, which instructions were by the court refused.

1. It is contended by the appellant that the court erred in declining to grant its petition for the removal of the cause to the federal court on the main theory that the

suit against the appellant and its employees or servants was separable, and therefore the cause could and should be tried separately in the federal court. We are of the opinion that the declaration sufficiently charges the concurring negligence of the master and servant, and that the master and servant were jointly liable and suable as such under the holding in this court in Mississippi Power Company v. Smith, 169 Miss. 447, 153 So. 376, and the authorities therein cited.

The appellant further contends that the evidence shows that Stewart made no defense; there was no verdict against him, and that he was brought to Bay St. Louis, in Hancock county, Mississippi, in the automobile of appellee's father, and was, upon that occasion, served with process. The evidence shows that Stewart was so brought at his request.

We are of the opinion that the declaration alleged joint liability of the master and servant; and it is the rule that, on the question of removal, the case must be deemed to be such as the plaintiff in good faith has made it by his pleading. See Alabama G. S. R. Company v. Thompson, 200 U. S. 206, 26 S. Ct. 161, 50 L. Ed. 441; also Southern Railway Co. et al. v. W. M. Miller, 217 U. S. 209, 30 S. Ct. 450, 54 L. Ed. 732.

It will be observed that none of the parties to this suit are residents of this state. In Ex parte Abram Wisner, 203 U. S. 449, 27 S. Ct. 150, 51 L. Ed. 264, it was held that where parties to a suit in a state were nonresidents of that state, the removal of the cause upon diversity of citizenship could not be had against the objection of the plaintiff. However, in the case of Lee v. Chesapeake & Ohio Ry. Co., 260 U. S. 653, 43 S. Ct. 230, 67 L. Ed. 443, the Wisner case was expressly overruled; so that the removability of the case does not rest upon the consent of the plaintiff in the action. We are of the opinion that the court did not err in overruling the motion to remove the cause.

2. On the question of liability and the refusal of instructions thereon, including the peremptory instruction requested by the defendant, there being no conflict on this phase of the case, we are of the opinion that the plaintiff was entitled to a peremptory instruction. Under the testimony of Stewart, there was no question of joint and concurring negligence of the master and the servant in placing this lamp globe negligently above the heads of prospective business visitors and customers.

We know, and it is generally known, that a filling station is a popular place for visitors, and the particular spot here is shown to have been occupied frequently by children and visitors. The father of this child was there by special invitation, and it is not shown that he remained there for an undue length of time. He had not completed his business. Under such circumstances the owner of the filling station and the land was under the duty as a shopkeeper to exercise the care of a reasonably prudent householder for the reception of such business visitors. The child accompanying the father, under the circumstances here detailed, was likewise a visitor. See Restatement, of the Law of Torts, section 332 (d), pages 897-900. Being of the opinion that the appellee was entitled to a peremptory instruction on the question of liability, we do not deem it necessary to consider the other assignments of error relative thereto.

3. It is insisted that the damages awarded to the appellee, five thousand dollars, are excessive in this case. Keeping in mind the conflict in the evidence as to the nature, extent, and cause of the injuries, and the fact that the jury adopted the evidence of the expert offered on behalf of appellee, we cannot now say, in view of the facts set forth, that the verdict is so excessive as to evince passion and prejudice on the part of the jury who tried the cause.

We find no reversible error herein.

Affirmed.