CHANDLER, J.,
for the Court.
¶ 1. Blaine, Lisa Marie, and Cory Howze attended a swimming party at the home of B.J. Garner. Garner allowed his daughter to use his home and pool for the party, but Garner was not involved in the planning of the party and did not attend. Cory drowned in Garner’s pool; the adult who was supervising the pool was unable to see Cory because the water in the pool was cloudy. Blaine and Lisa Marie sued Garner for creating a dangerous condition on his premises and failing to warn of the dangerous condition. The Harrison County Circuit Court granted summary judgment in favor of Garner. The Howzes appeal, raising the following issue:
WHETHER THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT
¶ 2. Binding no error, we affirm.
FACTS
¶ 3. B.J. Garner allowed his daughter to use his premises and pool for the purpose of hosting a children’s end-of-the year soccer team party, which was held on April 15, 2000. The pool was enclosed by a tent that enabled Garner to swim in his pool in colder weather. The invitation for the party stated that there would be a cost of $15 for trophies and awards given to each child and a cost of $10 per family for the meal. The invitation advised that parents of children who are not strong swimmers should provide flotation devices and that the pool would be supervised by adults. Garner did not participate in the planning of the party, he did not attend the party, and he was not advised of any of the details regarding the party.
¶ 4. Blaine and Lisa Howze (“the Howzes”) brought their children, seven-year-old Cory and thirteen-year-old Jarred, to the party. The Howzes were not comfortable with allowing Cory to swim without adult supervision, but they did not bring flotation devices. The Howzes did not speak with anyone regarding their concerns with Cory’s swimming abilities. When Lisa saw that adults were watching the swimmers, she left her sons at the .pool and went to talk with other party attendees. Lisa returned to the pool when she heard someone say that Cory had drowned. Cory was discovered at the bottom of the pool and died two days later.
¶ 5. One of the parents, Russell Lanier, supervised the swimming shortly before *902 Cory was found in the pool and was in the pool enclosure at the time Cory was discovered. One of the children told Lanier that she thought someone was at the bottom of the pool. ■ Lanier doubted that anyone was at the bottom of the pool because Lanier was looking at the bottom of the pool and did not see anything or anyone. He asked the girl informing him of this fact to dive to the bottopi of the pool and double-check. When the girl.swam to the bottom of the pool, she disappeared from his sight after she swam under three or four fe.et of water. Lanier dove in because he realized that someone could be at the bottom of the pool without being able to see him. Lanier pulled Cory out of the pool and into the garage.
¶ 6. The Howzes sued- Garner for creating dangerous conditions on his premises and failing to warn of such dangerous conditions. The circuit court granted summary judgment in favor of Garner.
ANALYSIS
WHETHER THE CIRCUIT COURT ERRED - IN GRANTING SUMMARY JUDGMENT
¶ 7. Summary judgment motions are reviewed de novo. Hudson v. Courtesy Motors, Inc., 794 So.2d 999, 1002(¶7) (Miss.2001). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions oh file, to-' gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). All evidence is viewed in the light most favorable to the non-moving party. Travelers Property Casualty Corp. v. Stokes, 838 So.2d 270, 273(¶9) (Miss.2003); Haggans v. State Farm Fire and Cas. Co., 803 So.2d 1249, 1252(¶ 7) (Miss.Ct.App.2002). However, to avoid summary judgment, the adverse party must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment will be entered against him. M.R.C.P. 56(e).
¶ 8. The analysis of premises liability involves three steps. Titus v. Williams, 844 So.2d 459, 467(¶ 28) (Miss.2003). The first step is to classify the status of the person as an invitee, licensee, or trespasser. Id. The second step is to assess, based on the party’s injured status, the duty which was owed to the injured party. Id. The last step is to determine whether the landowner breached his duty to the injured party. Id.
(A) Whether Cory was an invitee or licensee
¶ 9. The determination of which status a particular plaintiff holds can be a jury question, but where the facts are not in dispute the classification becomes a question of law. Adams v. Fred’s Dollar Store of Batesville, 497 So.2d 1097, 1100 (Miss.1986) (citing Graves v. Massey, 227 Miss. 848, 853, 87 So.2d 270, 271 (1956)).
¶ 10. In order to create invitee status, there must be a mutually advantageous interaction between the landowner and the invitee. Massey v. Tingle, 867 So.2d 235, 239(¶ 14) (Miss.2004). By contrast, a licensee enters upon the property of another for his own convenience, pleasure, or benefit pursuant to the license or implied permission of the owner. Hudson., 794 So.2d at 1003(¶ 10). The Howzes were required to pay $25 to attend the party on Garner’s property. The Howzes argue that this fact creates a jury question relating to Cory’s status. In Corley v. Evans, 835 So.2d 30, 32(¶ 4) (Miss.2003), a daughter hosted a crawfish boil for which she charged an admission fee on property that she owned jointly with her father. During the party, Corley’s friend acciden *903 tally shot him while they were on the defendants’ property. Id. at 33(¶ 7). The supreme court held that Corley was an invitee as to the daughter, because the daughter charged an admission fee for the crawfish boil. Id. at 37(¶.22). As to the father, however, Corley was a licensee, because the father derived no benefit from the crawfish boil; he did not receive any money from the daughter’s hosting of the crawfish boil and was not involved in its promotion or staging. Id. at 39(¶ 28). Similarly, Garner did not sponsor the party, did not attend, and did not receive any money from the party. Cory entered Garner’s premises as a licensee.
(B) Duty of care
¶ 11. In general, the duty owed to a licensee is to refrain from willfully or wantonly injuring the guest. Sharp v. Odom, 743 So.2d 425, 429(¶ 5) (Miss.1999). The supreme court has recognized an exception to this general rule. “The legal distinctions between a licensee and invitee have little significance once the presence of a person upon the possessor’s premises is known and there are affirmative actions involving him. Status relates largely to negligence for the condition of premises, that is, passive negligence and- not to active or affirmative negligence -emanating from action or inaction by the possessor with knowledge of an individual’s presence.” Hoffman v. Planters Gin Co., Inc., 358 So.2d 1008, 1012 (Miss.1978). The Hoffman court concluded that there is an obligation for a landowner to exercise reasonable care for the. protection? of a licensee “as to any active operations which the occupier carries on.” Id. at 1013. The Howzes urge this Court to apply the Hoffman exception.
¶ 12. Mississippi Supreme Court cases following Hoffman acknowledged that the Hoffman holding was a “very limited exception.” Little v. Bell, 719 So.2d 757, 761 (¶ 22) (Miss.1998).
In order to fall within the Hoffman exception, the landowner must be aware of the licensee’s presence upon the premises, the landowner must engage in affirmative or active negligence in the operation or control of a business, the landowners’ conduct in regards thereto must subject the licensee or invitee to unusual danger, or increase the hazard to him, and the landowner’s active or affirmative negligence must have proximately caused the plaintiffs injury.
Id. at 762(¶ 22).
¶ 13. A landowner must be engaged in affirmative or active negligence in the operation or control of a business before a plaintiff can invoke the Hoffman exception. Id. at 762(¶ 23). In the present case, Garner was not operating a business, nor did he derive any financial benefit from the Howzes’ presence; the incident occurred at Garner’s home residence. The Hoffman exception clearly does not apply.
(C) Whether Garner breached his duty of care
¶ 14. Since Cory entered Garner’s premises as a licensee, Garner owed to Gory the duty “to refrain from willfully or wantonly injuring him, and not to set traps for him by exposing him to hidden perils.” Marlon Inv. Co. v. Conner, 246 Miss. 343, 351, 149 So.2d 312, 315 (1963) (citing Dry v. Ford, 238 Miss. 98,117 So.2d 456 (1960); Wright v. Caffey, 239 Miss. 470, 123 So.2d 841 (1960)). The Howzes argue that a jury question exists as to whether the cloudy condition of the pool was a concealed danger or hidden peril.
¶ 15. The Howzes submitted into evidence a report from Dr. Tom Griffiths, Director of Aquatics from Pennsylvania State University. According to Dr. Grif- *904 fiths, numerous safety brochures are provided, free of charge at most pool supply stores, to prospective pool owners. Some of the brochures identified by Griffiths include “Children Aren’t Waterproof,” a publication promoting close adult supervision around pools; “Safety Barrier Guidelines for Home Pools,” a publication discussing the advantages of fences, walls, gates, and locks to protect children against drowning; and “The Sensible Way to Enjoy Your Inground Swimming Pool: An Essential Safety Guide, Mandatory Reading.” In 1995, Dr. Griffiths submitted a publication opining that residential pool parties should be supervised by certified lifeguards. In that publication, Dr. Grif-fiths stated that safeguarding children in a swimming pool requires a combination of lifeguarding techniques and safety equipment.
¶ 16. Dr. Griffiths stated that Cory’s drowning could have easily and inexpensively been avoided. He stated that Garner was negligent for failing to provide personal flotation devices and failing to install a “life-line” or buoyed rope that separates the shallow end of the pool from the deep end. He also stated that Garner was negligent for failing to read any pool safety brochures, not personally attending the pool party, and not hiring a certified lifeguard. Finally, Dr. Griffiths concluded that Garner was negligent for allowing children to swim in a cloudy pool.
¶ 17. Although Dr. Griffiths concludes that Garner was negligent, there is nothing in the report that states that Garner’s actions or inactions contributed to the cloudy water in the pool. Moreover, Dr. Griffiths’ report does not give an opinion as to whether the pool was a hidden peril or danger.
Garner concedes that there are dangers associated with allowing children to swim in pools. However, Garner argues that these dangers are not hidden perils. Appellate courts in other jurisdictions have concluded that swimming pools are not per se hidden perils. In Hemphill v. Johnson, 230 Ga.App. 478, 481, 497 S.E.2d 16, 19 (1998), the Georgia Court of Appeals affirmed the lower court’s grant of summary judgment. It concluded that the absence of safety or rescue equipment does not convert a pool into a mantrap because the risk of drowning is obvious. Similarly, appellate courts in Illinois have concluded that an above ground pool is an open and obvious danger as a matter of law. Englund v. Englund, 246 Ill.App.3d 468, 477, 186 Ill.Dec. 57, 64, 615 N.E.2d 861, 868 (1993). The risk of drowning in a pool is obvious. Therefore, Garner’s failure to provide flotation devices, hire certified lifeguards, install a life-line, or read brochures pertaining to pool safety does not constitute a breach of Garner’s duty to warn of hidden perils.
¶ 18. In “The Complete Swimming Pool Reference,” Second Edition, Dr. Griffiths comments on the causes of cloudy water in pools. Dr. Griffiths asserts that “[tjhere are numerous causes from cloudy water in swimming pools.” He states that water turns cloudy quickly when chlorine levels drop too low or if the water is not being filtered properly. Contributing causes to filtration problems include “[ojils, hair, and lint.” Dr. Griffiths states that high swimmer load is a contributing factor in causing cloudiness. The evidence shows that the cloudy condition of the pool occurred quickly. The Howzes presented no evidence showing that the pool’s water was cloudy prior to the children’s entry in the pool or that Garner knew or should have known that the large number of swimmers would contribute to the pool’s cloudiness.
¶ 19. Prior to the party, William Cook, the head coach of Cory’s soccer team, arrived at Garner’s premises, inspected the *905 pool, and found no condition that would alert him to the fact that the pool was unsafe.[1] According to Cook, the water looked sufficiently safe for children to swim. The first observation of the cloudy condition of the pool occurred when a girl informed Russell Lanier that someone was at the bottom of the pool.
¶ 20. Dr. Griffiths stated in his report, “[I]f Mr. Garner had simply maintained clear water in his pool, anyone in attendance probably would have seen and rescued Cory in a timely fashion.” However, Dr. Griffiths did not discuss what procedures Garner should have followed in maintaining the pool. In fact, the evidence shows that Garner did maintain the pool adequately. Garner testified that he hired Mac’s Pool Service to maintain the pool, clean the pool, and regulate the pH level. Garner testified that Mac’s maintained the pool every week during the summer, twice a month during the spring and fall, and once a month during the winter. Garner had employed Mac’s in this manner for a period of ten to twelve years. The Howzes presented no proof showing that the cloudiness in the pool was the result of Garner’s inactions.
CONCLUSION
¶ 21. The Howzes were licensee social guests of Garner. Garner was not involved in the planning of the soccer party, did not profit from the cost the Howzes paid to attend the party, and received no mutual benefit from the Howzes’ presence. A landowner owes a duty to licensees to refrain from willfully and wantonly injuring licensees and to warn of hidden dangers and perils. The Hoffman exception, which imposes upon landowners a duty to exercise reasonable care to a licensee, does not apply to the present case. Garner did not engage in affirmative acts of negligence, and he was not engaged in the operation or control of a business. The Howzes failed to present evidence that Garner knew or should have known that his pool was cloudy. The evidence shows that Garner properly maintained his pool and that the condition of the pool was inspected before any children were allowed to swim. The circuit court properly granted summary judgment.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING GRIFFIS, BARNES AND ISHEE, JJ„ CONCUR.

. The Howzes sued both Cook and Garner. The Howzes have settled their claims against Cook.