# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-IA-00935-SCT

*RICHARD L. CADE INDIVIDUALLY AND d/b/a*
*THE RIDGES PLANTATION*

*v.*

*KENNY BEARD, INDIVIDUALLY, AND ON*
*BEHALF OF THE ESTATE OF ZACHARY*
*WARREN BEARD AND ALL WRONGFUL DEATH*
*BENEFICIARIES AND MICKIE BEARD*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/23/2012 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GROVER CLARK MONROE, II |
| | ERIC REYNOLDS PRICE |
| | ROSLYN NICHOLE GRIFFIN |
| ATTORNEYS FOR APPELLEES: | REBECCA M. LANGSTON |
| | SHANE F. LANGSTON |
| | JESSICA ELIZABETH MURRAY |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED -  01/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2012-IA-00936-SCT

*TRUSTMARK NATIONAL BANK AS TRUSTEE*
*OF THE ESTATES OF THE DEFENDANT*
*TRUSTS OF, CHARLES LAMBERT HUFF,*
*ILANETTE HUFF BYRD AND KATHLEEN HUFF*
*COWLING*

*v.*

*KENNY BEARD, INDIVIDUALLY AND ON*
*BEHALF OF THE ESTATE OF ZACHARY*
*WARREN BEARD AND ALL WRONGFUL DEATH*
*BENEFICIARIES AND MICKIE BEARD*

DATE OF JUDGMENT:            05/23/2012
TRIAL JUDGE:                   HON. LAMAR PICKARD
COURT FROM WHICH APPEALED:  JEFFERSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:    GROVER CLARK MONROE, II
                                 ERIC REYNOLDS PRICE
                                 ROSLYN NICHOLE GRIFFIN
ATTORNEYS FOR APPELLEES:    REBECCA M. LANGSTON
                                 SHANE F. LANGSTON
                                 JESSICA ELIZABETH MURRAY
NATURE OF THE CASE:         CIVIL - WRONGFUL DEATH
DISPOSITION:                 REVERSED AND REMANDED -  01/09/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.    Zachary Beard, while hunting on Ridges Plantation, died of injuries he sustained in an all-terrain vehicle (ATV) accident.  Zachary's parents, Kenny and Mickie Beard, sued Richard Cade (doing business as Ridges Plantation) and Trustmark Bank, trustee of the property (the Trust), alleging that the defendants failed to adopt policies and procedures regarding the operation of ATVs by unlicensed and unsupervised minors. Cade and the Trust filed motions for summary judgment, and the trial court denied both motions.  Now, Cade and the Trust appeal and argue that (1) Zachary was a licensee, and (2) the parties had no duty to implement such policies and procedures.

¶2. We find that the trial court erred by denying the motions for summary judgment and thus, reverse the trial court's judgment and remand for entry of judgment in favor of the appellants.

## FACTS AND PROCEDURAL HISTORY

¶3. C.L. Huff, Cade's grandfather, owned a tract of land known as Ridges Plantation. On May 16, 1997, Huff leased Ridges Plantation to Cade for twenty years and gave Cade exclusive hunting rights to the property and the ability to sublet the property for hunting. In exchange, Cade agreed to pay the yearly property taxes, approximately $12,000.

¶4. Huff died, and in 2001, Ridges Plantation passed to a trust owned by his daughters – Ilanette Huff Byrd and Kathleen Huff Cowling. Trustmark Bank manages the trust, which includes several properties. Specific to Ridges Plantation, Trustmark maintains documents pertaining to the real estate and monitors the lease, taxes due, and insurance. A Trustmark representative testified that the property is inspected yearly to ensure the property still exists; a forester also inspects for fallen timber and monitors the growth and cutting of timber.

¶5. Given his rights under the lease, Cade organized an informal hunting club which included several of his friends. No membership applications or agreements were executed. In 2008, each member paid $1,500 in dues. Cade used the dues collected to pay the property taxes and other hunting-club expenses.

¶6. Kenny Beard (Kenny) was a dues-paying member of the hunting club for more than ten years. As a general practice, members were allowed to bring their minor children to hunt

for no additional fee.[1] Kenny's son Zachary hunted with him at Ridges Plantation. Members also were allowed to use and store their personal ATVs on the property. Neither Cade nor Ridges Plantation provided ATVs for members' use. At all times, each member had exclusive control of his personal ATV. Kenny owned a modified, red Honda ATV with a 680-cc engine, and Zachary owned a yellow ATV with a 400-cc engine.

¶7. On January 26, 2008, Kenny gave Zachary permission to retrieve deer-hunting stands with other members of the hunting camp. Unbeknownst to Kenny, Zachary took the larger, red ATV on his excursion. At some point, Zachary separated from the group. The ATV rolled and landed on top of Zachary, causing his death. No one witnessed the accident.

¶8. In his deposition, Kenny stated that he rarely allowed Zachary to use the red ATV because he did not want him to damage it. Kenny indicated that Zachary had been riding ATVs for seven years, and he considered Zachary to be an expert rider. Kenny also stated that Zachary was able to navigate difficult terrain, and he was familiar with Ridges Plantation's terrain, having hunted there for years.[2] Kenny guessed that Zachary, in an attempt to avoid small trees, had attempted to ride the steep slope of the spur or slid off the side of the spur. Kenny did not blame Zachary's accident on the landscape. Kenny stated that the landscape was in its natural condition, and he did not think anything should have

[1] Cade explained that the fees were designed around usage of camp facilities and food. Because minors did not consume much, he did not charge a fee for minors. In the event a minor killed a deer, it would be attributed to the main member's (typically their father's) harvest.

[2] Deer stands were numbered at Ridges Plantation. Zachary's accident occurred near stand twenty-two. Kenny stated that stand twenty-two was their favorite stand. It was a permanent stand, which had been in its location for two years. According to Kenny, Zachary had hunted at stand twenty-two at least a dozen times that hunting season.

been done to change it. Instead, Kenny stated that Zachary's accident would not have occurred if the hunting camp had rules in place regarding ATV use and supervision of minors.[3]

¶9. In his deposition, Cade stated that a minor's ATV use was left up to the parent. Although Cade did not witness Zachary's accident, he opined that Zachary probably made a mistake while traversing the terrain. Cade denied that the area was inherently dangerous, but he acknowledged that the area, in its natural state, was hilly.[4] Cade stated that, during

---

[3]Kenny stated that all members were allowed to give input regarding hunting-camp rules. Kenny, however, admitted that he did not participate in camp meetings or get involved in discussions regarding rules. According to Kenny, he did not have much of an opinion on camp rules, and he went along with everyone else.

[4]Cade's deposition centered around his answer to an interrogatory in which Kenny claims Cade admitted the area near stand twenty-two was dangerous. The interrogatory and subsequent answer reads:

> **INTERROGATORY NO. 3**: If you contend that Zachary Warren Beard was using or operating the subject ATV in a manner for which it is not intended, designed, or recommended to be used at the time of the subject accident, please state in complete detail the way(s) in which you contend such use or operation by Zachary Warren Beard was not an intended use and/or a misuse of the subject ATV, how such use contributed to the accident or his injuries, and identify all persons with personal knowledge thereof.
>
> **RESPONSE TO NO. 3**: . . . While it appears Zachary Beard did something to cause the accident, at this time, I am not able to say whether Zachary was using the ATV in an unsafe manner. I will need to rely upon experts my attorney will hire to evaluate Zachary Beard's actions. Without waiving said objection, Zachary was operating the subject ATV in a naturally wooded area, which by its nature is filled with uneven ground, debris, and other objects. At the time the accident occurred, it appears that Zachary was driving along the side of a very steep hill and the ATV rolled over on top of him. American Honda has made specific assertions related to the vehicle operation which I adopt as my own as well. It appears that Zachary Beard rode the vehicle into an area he should not have taken the ATV and he is responsible for that decision . . . .

5

the hunting club's history, there had never been an ATV accident; thus, no need existed to implement rules concerning ATV use. Hunting-camp rules generally were discussed and implemented as needs arose.

¶10. On January 25, 2011, Kenny sued Cade and the Trust on a negligence theory, claiming the defendants failed to implement policies and procedures regarding the use of ATVs by unsupervised, unlicensed minors. In April 2012, Cade and the Trust filed separate motions for summary judgment, arguing that they did not breach any legal duties to Zachary. The trial court denied both motions and found that questions of fact existed regarding Zachary's status, the defendants' liability, and the amount of diligence exercised in performing the duties owed to Zachary. Aggrieved, Cade and the Trust filed separate motions for interlocutory appeal. The Court granted the parties' motions and consolidated the cases for appellate review.

## ANALYSIS

¶11. The Court reviews the grant or denial of summary judgment de novo. *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1165 (¶7) (Miss. 2011). The evidence is viewed in the light most favorable to the nonmoving party. *Id*. The moving party bears the burden to show no genuine issue of material fact exists. *Poppenheimer v. Estate of Coyle*, 98 So. 3d 1059, 1062 (¶8) (Miss. 2012). To survive summary judgment, the opposing party may not rely on mere allegations but must set forth specific facts to show genuine issues for trial. *Whiting v. Univ.*

---

Cade stated that it was his attorney, not he, who provided the answer. And Cade stated that the answer was not an admission that the area was dangerous.

*of S. Miss.*, 62 So. 3d 907, 914 (¶9) (Miss. 2011).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  M.R.C.P. 56(c).

### I.  The Trust

¶12.    The Trust argues that Zachary was a licensee, and it did not breach any duty owed to him.  Conversely, Kenny argues that Zachary was an invitee and, thus, owed a higher duty.  Kenny alleges that the Trust failed to ensure that Ridges Plantation operated under sufficient policies, procedures, rules, and regulations to prevent harm to Zachary.  The Trust counters that Kenny's argument is not supported by law, and no such duty exists.

### A.  Status

¶13.    In premises-liability cases, the Court must determine the victim's status, the duty owed by the defendant, and whether the defendant breached that duty.  *Double Quick*, 73 So. 3d at 1166 (¶¶11-12).  Three categories exist – invitee, licensee, or trespasser.  *Id* at 1166 (¶12).  For purposes of this case, we must decide only whether Zachary was an invitee or a licensee.

¶14.    An invitee enters "the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage."  *Corley v. Evans*, 835 So. 2d 30, 37 (¶21) (Miss. 2003).  A licensee, however, enters "the property of another for his own convenience, pleasure, or benefit pursuant to the license or implied permission of the owner."  *Id*.  When circumstances surrounding the victim's purpose on the property are in dispute, status will be a fact question for a jury to decide.  *Little by Little v. Bell*, 719 So. 2d

7

757, 760 (¶17) (Miss. 1998). But where there are no factual disputes, status is a question of law for the trial court's determination. *Id*.

¶15. Kenny claims Zachary was the Trust's invitee. According to Kenny, the lease allowed the Trust to repossess the property if Cade violated terms of the lease agreement. Under the lease, Cade was required to "govern himself and any subleases or assignees according to the game laws of the State of Mississippi and ordinary hunting practices."[5] And Kenny claims that the Trust was required to ensure Cade abided by these rules. Kenny asserts that Cade, by failing to implement rules regarding ATV use by minors, violated the lease. Also, because the Trust knew that Cade was operating a hunting camp on the property, Kenny contends the Trust also was responsible for Cade's breach.

¶16. The Trust argues that Kenny's position is not supported by law. Under premises-liability law, the Trust claims that Zachary was a licensee, not an invitee. First, the Trust states that it was not involved in the promotion, development, or operation of the hunting club. Second, although Cade used hunting-club proceeds to pay the property taxes, the Trust states that it did not receive money from Cade's operation of the facility, and Cade was responsible for paying property taxes regardless of income he derived from the hunting club. Thus, it claims Zachary was not an invitee but a licensee – on the premises for his own pleasure and benefit.

¶17. This case is similar to *Corley*. In *Corley*, Stacey Evans (Stacey) hosted a crawfish boil on property she owned jointly with her father, James Evans (James). *Corley*, 835 So. 2d at

---

[5]Kenny fails to identify what gaming laws or ordinary hunting practices Cade did not follow.

8

32 (¶4). The victim, Scott Corley, paid an entry fee to attend. *Id*. at 32 (¶5). During the event, Corley was shot accidentally by a friend. *Id*. at 33 (¶¶7-8). Corley sued Stacey and James for the injuries and damages he sustained from the shooting. *Id*. at 32 (¶2). The Court determined that Corley was Stacey's invitee. *Id*. at 37 (¶22). Corley and Stacey enjoyed a mutual advantage. *Id*. She received money in exchange for Corley's benefit to attend the crawfish boil. *Id*. But in regard to James, the Court held that Corley was a licensee, finding that "James derived no benefit from the crawfish boil and was not involved in its promotion or staging." *Id*. at 39 (¶28).

¶18. The Court of Appeals reached the same conclusion in *Howze v. Garner*, 928 So. 2d 900 (Miss. Ct. App. 2005). In *Howze*, B.J. Garner allowed his daughter to host a pool party at his home. *Id*. at 901 (¶3). The daughter charged guests to attend the party. *Id*. During the party, a child drowned in the pool. *Id*. at 901 (¶4). The child's parents sued Garner "for creating dangerous conditions on his premises and failing to warn of such dangerous conditions." *Id*. at 902 (¶6). As to Garner, the Court of Appeals determined that the child was a licensee, stating that "Garner did not sponsor the party, did not attend, and did not receive any money from the party." *Id*. at 903 (¶10).

¶19. Like James and Garner, the Trust neither promoted the hunting camp, operated the hunting camp, nor received any money from the hunting camp. We thus find that Zachary was a licensee.

### B. Duty

¶20. Zachary was a licensee to the Trust. As a licensee, the Trust owed Zachary a duty to refrain from willfully or wantonly causing injury to him. *Corley*, 835 So. 2d at 39 (¶28).

"This Court has defined 'willful and wanton' as 'knowingly and intentionally doing a thing or wrongful act.'" ***Vaughn ex rel. Vaughn v. Estate of Worrell***, 828 So. 2d 780, 783 (¶13) (Miss. 2002). No evidence in the record suggests that the Trust did anything willful or wanton to injure Zachary. We thus find that the Trust did not breach its duty to Zachary.

¶21. "[T]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). Accordingly, we find that the trial court erred by denying the Trust's motion for summary judgment. The trial court's denial of summary judgment is reversed, and we remand for entry of judgment in favor of the Trust.

## II. Cade

¶22. Cade also argues that Zachary was a licensee and that he did not breach any duty owed to Zachary. Conversely, Kenny argues that Zachary was an invitee and thus was owed a higher duty. Kenny alleges that Cade failed to ensure that Ridges Plantation operated under sufficient policies, procedures, rules, and regulations to prevent harm to Zachary. Alternatively, Cade argues that, even if Zachary were an invitee, he did not breach any duty owed to Zachary.

### A. Status

¶23. As mentioned previously, the Court must decide only whether Zachary was an invitee or a licensee. An invitee enters "the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." ***Corley v. Evans***, 835 So. 2d 30, 37 (¶21) (Miss. 2003). A licensee, however, enters "the property of another for his

own convenience, pleasure, or benefit pursuant to the license or implied permission of the owner." *Id*.

¶24. Because Kenny (a paying member of the hunting club) invited Zachary to hunt, Kenny claims Zachary was an invitee as to Cade. Kenny states that his hunting-club membership encompassed him (the hunter) and his children less than eighteen years old. Kenny asserts that an invitee's minor child, who accompanies the invitee on the premises for a legitimate business purpose, also is entitled to invitee status. Kenny argues further that Cade had created rules for minors to follow (e.g., how many bucks a child could claim each year); thus, Cade should have enacted rules regarding ATV use and supervision of minors. Because Cade failed to implement such rules, Kenny claims that Cade breached the duty owed to Zachary. Kenny also states that he has expert testimony to prove that: (1) rules regarding ATV use and minors' supervision should have been in place, and (2) dangerous terrain should have been marked, and visitors should have been warned of any known dangers.[6]

¶25. Because Kenny owned the ATV and allowed his son to ride, Cade argues that Kenny was responsible for supervising Zachary's ATV use. Cade neither accepted custody or responsibility for Zachary, nor was he obligated to regulate ATV use on the property. In addition, Cade claims that Zachary was a licensee. Alternatively, if the Court finds that Zachary was an invitee, Cade argues he did not breach any duty owed to an invitee.

¶26. The law is clear; Zachary was an invitee of Cade and Ridges Plantation. In *Gulf Refining Company v. Moody*, a child accompanied her father to a gas station. *Gulf Refining*

---

[6]For this information, Kenny relies on the designation of experts he filed with the lower court. No expert filed a sworn affidavit in this case.

11

*Co. v. Moody*, 172 Miss. 377, 160 So. 559, 560 (Miss. 1935). While there, a lamp globe fell on her head, causing severe injuries. *Id*. The Court held that the minor, who accompanied her father to the gas station for a legitimate business purpose, was entitled to invitee status. *Id*. at 562. In a subsequent case, the Court stated that "[o]rdinarily, a child who accompanies a parent or other adult customer onto business premises to conduct business is an invitee." *Hoffman v. Planter Gin Co.*, 358 So. 2d 1008, 1011 (Miss. 1978) (citing *Gulf Refining*, 160 So. 2d at 562).

¶27. Kenny was an invitee as to Ridges Plantation. Cade gave Kenny an express invitation to enter the premises for their mutual advantage. Cade collected a fee, and Kenny was allowed to hunt on the land. Although Kenny did not pay a separate fee for Zachary to hunt, Kenny's hunting-club membership allowed him to bring Zachary, his minor child, to hunt at no additional charge. Thus, to the extent that Kenny was entitled to invitee status, Zachary was entitled to invitee status as well. These facts were not in dispute; thus, the trial court erred by finding Zachary's status was a question for the jury.

### B. Duty

¶28. Zachary was an invitee as to Ridges Plantation. "[A] property owner is not the insurer of an invitee's safety." *Doublequick*, 73 So. 3d at 1166 (¶13). But Cade, as the lessee, owed Zachary, the invitee, "a duty . . . to keep the premises reasonably safe and, when not reasonably safe, to warn only of hidden dangers not in plain and open view." *Id*. As an invitee, Zachary also had a duty: "The invitee is still required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would

12

exercise under the same or similar circumstance." *Vu v. Clayton*, 765 So. 2d 1253, 1255 (¶7) (Miss. 2000) (quoting *Fulton v. Robinson Indus., Inc.*, 664 So. 2d 170, 175 (Miss.1995)).

¶29. Ridges Plantation was used for hunting. In its natural state, Ridges Plantation consisted of many hills and ridges. Kenny stated that Zachary was an expert ATV rider, he was very familiar with Ridges Plantation's terrain, and he was skilled enough to navigate difficult terrain. The site of the accident, hunting stand twenty-two, was a permanent stand that had been there for two years. Kenny stated that Zachary had hunted there at least a dozen times that hunting season. When asked whether anything should have been done to the property to make it safer, Kenny said no. Instead, Kenny blamed Zachary's accident on the lack of hunting-camp rules regarding ATV use and supervision of minors.

¶30. Kenny argues that Cade's response to interrogatory three was an admission that the property was dangerous. Cade answered:

> While it appears Zachary Beard did something to cause the accident, at this time, I am not able to say whether Zachary was using the ATV in an unsafe manner. I will need to rely upon experts my attorney will hire to evaluate Zachary Beard's actions. Without waiving said objection, Zachary was operating the subject ATV in a naturally wooded area, which by its nature is filled with uneven ground, debris, and other objects. At the time the accident occurred, it appears that Zachary was driving along the side of a very steep hill and the ATV rolled over on top of him. American Honda has made specific assertions related to the vehicle operation which I adopt as my own as well. It appears that Zachary Beard rode the vehicle into an area he should not have taken the ATV and he is responsible for that decision . . . .

We disagree with Kenny's assessment of the answer. No evidence exists that Cade failed to keep the premises reasonably safe or failed to warn Zachary of any hidden dangers. As evidenced by Kenny's deposition testimony, Zachary was quite familiar with Ridges

Plantation's terrain, especially the terrain near stand twenty-two, and Zachary was a skilled ATV rider.

¶31. In regard to the lack of rules, Kenny has failed to provide any authority in support of his claim that Cade had a legal duty to implement rules regarding ATV use and supervision of minors. If a legal duty did exist, Kenny has failed to show how a lack of rules was the proximate cause of Zachary's death.[7] *See* **Doublequick**, 73 So. 3d at 1166 (¶15). Accordingly, we find that Cade did not breach any duty owed to an invitee.

¶32. "[T]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). Thus, we find that the trial court erred by denying Cade's motion for summary judgment. The trial court's judgment is reversed, and we remand for entry of judgment in favor of Cade.

## CONCLUSION

¶33. As to the Trust, Zachary was a licensee. The Trust owed Zachary a duty to refrain from willfully or wantonly causing injury to him. Neither the record nor Kenny's allegations suggest that the Trust did anything willful or wanton to injure Zachary. Because no genuine issue of material fact exists, the trial court erred by denying the Trust's motion for summary judgment.

---

[7]"Proximate cause is defined as the 'cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred.'" **Doublequick**, 73 So. 3d at 1166 (¶15) (quoting **Delahoussaye v. Mary Mahoney's, Inc**., 783 So. 2d 666, 671 (¶13) (Miss. 2001)).

14

¶34. As to Cade, Zachary was an invitee. Cade owed Zachary a duty to keep the premises reasonably safe and when not reasonably safe to warn only where there is hidden danger or peril that is not in plain and open view. The record does not show that Cade failed to keep the premises reasonably safe or failed to warn Zachary of any hidden dangers. Because no genuine issue of material fact exists, the trial court erred by denying Cade's motion for summary judgment.

¶35. Accordingly, we reverse the trial court's judgment and remand the case for entry of judgment in favor of the appellants.

¶36. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER AND COLEMAN, JJ., CONCUR. PIERCE, J., NOT PARTICIPATING.**